IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **Linh Tran Stephens, an individual,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: CV-25-322-SEH-JFJ |
| ) | |
| **State of Oklahoma, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**Motion To Dismiss of Defendants Grecu-Radu, Eddingfield, Sukovaty, Miller, Cartmell, Shropshire, Fullerton, Carmichael, Martin, Morris, and Hendricks**
<u>**And Brief In Support**</u>

Defendants, Larisa Grecu-Radu, Deborah Eddingfield, Leah Sukovaty, Shasta Miller, Jeffery Cartmell, Deborah Shropshire, Jennifer Fullerton, Jeria Carmichael, Jessica Martin, Laurie Morris, and Taylor Hendricks, in their official and individual capacities, (hereinafter collectively "Defendants") respectfully move the Court to dismiss this action pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reasons stated in the following brief.

**I.  Argument and Authorities**

**A.  <u>Motion to Dismiss Standard for Lack of Subject Matter Jurisdiction</u>**

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is in the form of "a facial attack." *Holt v. U.S.,* 46 F.3d 1000, 1002 (10th Cir. 1995). A "facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. U.S.,* 922 F.2d 320, 325 (6th Cir. 1990)). If a court determines it has been deprived of subject matter jurisdiction, then such court must dismiss the complaint pursuant to Rule 12(b)(1). Defendants contend that this Court is without jurisdiction over Plaintiff's suit because it was brought in derogation of the Eleventh Amendment and the

sovereign immunity of the State of Oklahoma. Accordingly, the claims should be dismissed pursuant to Rule 12(b)(1).

### B.  Standard for Dismissal for Failure to State a Claim

Defendants also contend Plaintiff has failed to state a claim for relief. "To survive a motion to dismiss [for failure to state a claim under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly* at 556). Under this standard, the Tenth Circuit has stated that "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original). In other words, a plaintiff must nudge his "claims across the line from conceivable to plausible[.]" *Twombly* at 570. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 679.

The Tenth Circuit in *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008), explained that "plausibility" refers to the scope of the allegations in the complaint; "if they are so general that they encompass a wide swath of conduct, much of it innocent" or if the allegations are no more than "labels and conclusions" or a mere "formulaic recitation of the elements of a cause of action" then such allegations are not sufficient to place defendants on notice "of the actual

grounds of the claim" against them. When this standard is applied to the factual allegations of the Amended Complaint, it is clear that this action should be dismissed pursuant to Rule 12(b)(6).

### C. Plaintiff's Complaint is Subject to Dismissal Under Fed. R. Civ. P. 12(b)(1) Due to Eleventh Amendment Sovereign Immunity

The Oklahoma Department of Human Services ("DHS") (formerly known as the Department of Public Welfare and the Department of Institutions, Social and Rehabilitative Services) was created in 1936 by §2 of Article XXV of the Oklahoma Constitution for the purpose of "administering and carrying into execution" all laws enacted by the Oklahoma Legislature pursuant to §1 of Article XXV. *See* 56 O.S. §§162.1(a) and 162.1a. Section 2 also requires DHS to "perform such other duties as may from time to time be prescribed by law." *See generally City of Sand Springs v. Department of Public Welfare,* 608 P.2d 1139 (Okla. 1980). Within this legal framework is the establishment and maintenance of the OAH which conducts administrative child support hearings (such as Plaintiff's OAH case) with the help of Administrative Law Judges. Likewise, DHS is tasked under state and federal law with investigation of child abuse and neglect allegations and cases. As an agency of the State of Oklahoma, DHS is unquestionably an arm of the State of Oklahoma. *See, for example, Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1990); *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 150 (1981) (per curiam); *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam).

The foregoing in mind, the Eleventh Amendment provides:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

Towards this end,

> [t]he Supreme Court has interpreted the Eleventh Amendment to mean "States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). This prohibition encompasses suits against state agencies. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

*Muscogee (Creek) Nation v. Oklahoma Tax Comm'n,* 611 F.3d 1222, 1227 (10th Cir. 2010).

Because States may not be sued in federal court absent their consent or specific and unequivocal Congressional mandate,

> [t]he Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state. *See Steadfast Ins. Co. v. Agric. Ins. Co.,* 507 F.3d 1250, 1252–53 (10th Cir.2007).

*Wagoner Cty. Rural Water Dist. No. 2 v. Grand River Dam Auth.,* 577 F.3d 1255, 1258 (10th Cir. 2009).

As for the possibility that OKDHS/CSS has unequivocally consented to suit herein by waiving its Eleventh Amendment sovereign immunity,

> [t]he Court will give effect to a State's waiver of Eleventh Amendment immunity "'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *306 *Atascadero State Hospital, supra,* 473 U.S., at 239–240, 105 S.Ct., at 3145–3146 (quoting *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974) (internal quotation omitted)). A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts, see, *e.g., Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home Assn.,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (*per curiam*), and "[t]hus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*" *Atascadero State Hospital, supra,* 473 U.S., at 241, 105 S.Ct., at 3146.

*Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305–06, 110 S. Ct. 1868, 1873, 109 L. Ed. 2d 264 (1990).

In this vein, it is clear that the State of Oklahoma and its agencies – including DHS – have not waived their Eleventh Amendment immunity and consented to actions in federal court such as this case. *See* 51 O.S. §152.1(B) (which expressly preserves the State of Oklahoma's Eleventh Amendment immunity). Likewise, Oklahoma's Eleventh Amendment immunity has not been negated by any unequivocal Congressional mandate subjecting DHS to suit herein for alleged civil rights violations,

> [i]t is well settled that neither 42 U.S.C. § 1981 nor § 1983 abrogate the Eleventh Amendment immunity of the states. *E.g., Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66–67, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (§ 1983); *Ellis v. Univ. of Kan. Med. Ctr.,* 163 F.3d 1186, 1196 (10th Cir.1998) (§§ 1981, 1983, and 1985). Thus, Congress has not abrogated the defendants' Eleventh Amendment immunity under these provisions.

*LaFavre v. Kansas ex rel. Stovall,* 6 Fed. Appx. 799, 805 (10th Cir. 2001).

The foregoing in mind, Defendants– State of Oklahoma employees – in their official capacity unquestionably were and/or are acting as on behalf of the State of Oklahoma in enforcing the terms/requirements of the Oklahoma child support plan. As such, Plaintiff's claims against Defendants in their official capacity are jurisdictionally[1] barred pursuant to the plain language of the Eleventh Amendment and must be dismissed:

> [f]inally, when a suit seeks money damages against an official of a state agency, suing that official in his or her official capacity, then the "real party in interest" is the state, and the suit is barred by the Eleventh Amendment. *See Edelman*, 415 U.S. at 663.

*ANR Pipeline Co. v. LaFaver*, 150 F.3d 1178, 1187 (10th Cir. 1998).

---

[1] "Because the State's assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the district court, the issue must be resolved before a court may address the merits of [the] underlying . . . claim." *Martin v. Kansas*, 190 F.3d 1120, 1126 (10th Cir. 1999), overruled on other grounds by *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 148 L. Ed. 2d 866, 121 S. Ct. 955 (2001)."
*Joseph A. v. Ingram*, 275 F.3d 1253, 1259 (10th Cir. 2002)

### D.  The *Rooker-Feldman* Doctrine Warrants Dismissal

It is beyond dispute that Plaintiff's claims arise from state court judgments[2] for child support. Resultantly, they are barred herein according to the *Rooker-Feldman* doctrine which holds that the federal courts (other than the United States Supreme Court) lack jurisdiction to adjudicate claims seeking review of state court judgments. *Feldman*, 460 U.S. at 483-484. *See Kiowa Indian Tribe of Oklahoma v. Hoover,* 150 F.3d 1163, 1169 (10th Cir. 1998) (holding that "federal review of state court judgments can be obtained only in the United States Supreme Court" under 28 U.S.C. §1257). Apt here is the following from the Tenth Circuit:

> [t]he Supreme Court has explained that *Rooker-Feldman* "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). "In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Campbell*, 682 F.3d at 1283. Tso's Complaint seeks relief from alleged harms flowing from "acts of the state court." *Campbell*, 682 F.3d at 1285. That is, "the allegedly wrongful act that caused damage was the state-court order itself," and his claims "required a determination of the bona fides of the prior state-court judgment," *id.* at 1284. Though he complains of various acts taken by the defendants, whether through a RICO "conspiracy" or denial of just compensation, the only harms alleged involved deprivations that resulted from the state courts' orders. His claims are therefore barred by *Rooker-Feldman*.

*Tso v. Murray*, 760 F. App'x 564, 567-68 (10th Cir. 2019).

Plaintiff's complaints are born of state court orders and his requested relief would require this court to impermissibly determine the "bona fides" of the orders. *Ibid.*

Further, the *Rooker-Feldman* doctrine bars consideration not only of issues <u>actually</u> presented to and decided by a state court, but also bars consideration of constitutional claims that are "'inextricably intertwined' with" issues ruled upon by a state court. *See id.* (quoting *Feldman,*

---

[2] Both the actual child support order as well as past due child support that become judgments automatically by operation of law. *See, inter alia,* 43 O.S. § 137.

460 U.S. at 483-84, n.16). "A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995). "In other words, *Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Id.* In this case it is inescapable that the events giving rise to Plaintiff's allegations arise from and are inextricably intertwined with a current state court case involving child support and/or would involve this court reviewing the decisions of a state court. Likewise, to the extent that Plaintiff seeks a declaratory judgment regarding child support, such would be barred by *Rooker-Feldman* as well:

> *Feldman* not only prohibited direct review of state judgments by lower federal courts, but it also prohibited those federal courts from issuing any declaratory relief that is "inextricably intertwined" with the state court judgment. *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315–16 n. 16; *Razatos,* 746 F.2d at 1433.

*Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991).

### E.  Plaintiff's Complaint Fails To State A Claim Upon Which Any Relief Can Be Granted Against Defendants In Their Official Capacities Under 42 U.S.C. §§ 1983, 1985

Plaintiff cannot recover against Defendants on her 1983 or 1985 claims because Defendants in their official capacities are not persons subject to suit thereunder.  In this regard, § 1983[3] provides in pertinent part as follows:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Ibid* (Emphasis added).

---

[3] Likewise, §1985 applies to "two or more persons." *Ibid.* Therefore, §1985 is inapplicable to DHS. *See, inter alia, Will v. Michigan Department of State Police*, 491 U.S. 58 (1989).

In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the United States Supreme Court considered the issue of whether a State is a "person" under § 1983. After examining the express language, congressional purpose and legislative history of the statute, the Supreme Court concluded that States or other governmental entities that are considered "arms of the State" for Eleventh Amendment purposes are not "persons" under § 1983. *Id.* at 68-71. *See also Howlett v. Rose,* 496 U.S. 356, 365 (1990) (holding that "*Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under §1983 in either federal court or state court.") (emphasis added); *Harris v. Champion*, 51 F.3rd 901, 905-06 (10th Cir. 1995). OAH/DHS is clearly an "arm" of the State of Oklahoma. *See McKinney v. State of Okl., Dep't of Human Servs.,* 925 F.2d 363, 365 (10th Cir. 1991)(holding that the Eleventh Amendment bars actions against DHS under § 1983 in federal court).

### F.  Plaintiff Has Failed To State A Claim

Plaintiff's Amended Complaint is nothing more than a cri de coeur comprised of conclusory statements and absurd allegations which fall woefully short of plausibility. Further, there are no there factual allegations made against any of the Defendants. Because of this, Plaintiff has "not nudged [her] claims across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. at 547. Accordingly, Plaintiff's claims must be dismissed for failure to state a claim.

### G.  Plaintiff's Lawsuit Is Untimely

"A hodgepodge of state and federal law governs the timeliness of claim under 42 U.S.C. §1983." *Mondragon v. Thompson,* 519 F.3d 1078, 1082 (10th Cir. 2008). Federal law determines the date on which the claim accrues, but the limitations period is drawn from the "personal-injury statute of the state in which the federal district court sits." *Id.* Under federal law, "claims accrue

and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma,* 382 F.3d 1206, 1215 (10th Cir. 2004). Oklahoma has a two-year statute of limitations for personal-injury suits. 12 Okla. Stat. §95(A)(3). To the extent Plaintiff pleads any claims against Defendants, they are all outside of the applicable statutes of limitation.

Plaintiff also fails to allege in her Amended Complaint her compliance with the Oklahoma Governmental Tort Claims Act ("GTCA") which is fatal to Plaintiff's suit. All tort actions and claims against the State of Oklahoma and its agencies (including DHS), and employees arising after October 1, 1985, are governed by the provisions of the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. §151, *et seq. See* 51 O.S. §171. By enacting the GTCA, the Oklahoma Legislature adopted and expanded the common law doctrine of sovereign immunity doctrine to include all torts of State employees regardless of whether the employees are engaged in "governmental or proprietary functions" as long as the employees were within the scope of their employment with the State. *See* 51 O.S. §152.1(A) and §153(A). However, 51 O.S. §152.1(B) effectuated an express partial waiver of the State's sovereign immunity *"only to the extent and in the manner provided"* by the GTCA. (Emphasis added). Thus, the liability of the State and its agencies under the GTCA is "subject to the limitations and exceptions specified in this act" and "*shall be exclusive and shall constitute the extent of tort liability of the state* . . . *arising from common law*, statute, *the Oklahoma Constitution*, or otherwise." 51 O.S. §153(A) and §153(B) (emphasis added).

To successfully bring a tort claim against DHS, an individual must comply with the notice and commencement provisions of the GTCA. *See* 51 O.S. §§ 153 and 156; *Barrios v. Haskell Cty. Pub. Facilities Auth.,* 2018 OK 90, 432 P.3d 233; *Gurley v. Memorial Hospital of Guymon,* 1989

OK 34, 770 P.2d 573, 576 (noting that the GTCA "narrowly structures the method for bringing a tort claim against a political subdivision."). Notice is a central component of the GTCA. *See* 51 O.S. § 157(B) ("No action for any cause arising under this act . . . shall be maintained unless valid notice has been given[.]");

> Compliance with the statutory notice provisions of the GTCA is a jurisdictional requirement to be completed prior to the filing of any pleadings. The record before us does not show that Hall has complied with the notice provisions of the GTCA, nor does he allege that he has complied. In addition to the applicability of § 566.4, 57 O.S.2011 § 566.5 provides that complete exhaustion of statutory remedies against private correctional facilities is jurisdictional Based on the record provided, and the plain and unambiguous requirements of 57 O.S.2011 § 566.4 and § 566.5, the district court had no jurisdiction over the tort claims asserted in Hall's lawsuit and properly granted the defendant's motion for summary judgment

*Hall v. GEO Grp., Inc.,* 2014 OK 22, ¶ 13, 324 P.3d 399, 404.

Further, "[c]ompliance with notice of claim provisions has been interpreted to be either a condition precedent to suit against a political subdivision, or a jurisdictional prerequisite to judicial intervention." *Gurley*, 770 P.2d at 576. Additionally, the GTCA requires any person having a claim against the state to submit a claim in writing within one (1) year of the date of loss or the claim is "***forever barred***." 51 O.S. § 156 (emphasis added).

The foregoing in mind, Plaintiff's lawsuit concerns occurring well beyond any applicable statute of limitations and must result in dismissal with prejudice. Additionally, Plaintiff's failure to adhere to the mandatory strictures of the GTCA and her failure (and inability) to plead compliance with the GTCA also creates a jurisdictional bar to her claims.

### H. Plaintiff Wholly Failed To Comply With Rule 8

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must "state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). Specifically, Rule 8(a) instructs the plaintiff to

plead for relief in a "short and plain statement," while Rule 8(d)(1) adds that each allegation in the complaint must be "simple, concise, and direct." Fed. R. Civ. P. 8(a) and (d). Accordingly, something "written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs" would violate Rule 8. *See Mann*, 477 F.3d at 1148.

Admittedly, perfection is not required of a pro se party and it is understood that pro se litigants are held to a less stringent standard as to the form and, in some respects, content of a pleading. However, although the drafting standard may be less stringent, the requirement that pro se plaintiffs must still adhere to the Federal Rules of Civil Procedure is not. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840, 62 Fed. R. Serv. 3d 1019, (10th Cir. 2005); *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir.1994) (citing several cases for principle that *pro se* parties must comply with same procedural rules that govern all other litigants). *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 1994 WL 401467 (10th Cir. 1994). In this regard, when a plaintiff violates Rule 8, a district court is authorized to dismiss the case, in its entirety, based upon this violation alone. *Mann v. Boatright,* 477 F.3d 1140, 1138-49 (10th Cir. 2007). In fact, it is not the court's job to cobble together potential claims strewn about in an overly lengthy complaint and dismissal of any such complaint is appropriate. *Id*

Finally, a Rule 8 violation is different from a failure to state a claim under Rule 12(b)(6). Even if a complaint sufficiently alleges enough facts to survive a 12(b)(6) motion to dismiss, a Court may still invoke Rule 8 to strike the complaint if the necessary facts are "scattered throughout the complaint" or completely absent. *See Mann*, 477 F.3d at 1147; *see also Ciralsky v. C.I.A.*, 355 F.3d 661, 671 (D.C. Cir. 2004) (holding that there was a Rule 8 violation even though plaintiff had pled more details than necessary to survive dismissal under Rule 12(b)(6)).

In the case at bar, the Amended Complaint fails to contain a simple, concise, short and plain statement as to the alleged harm and the relevant facts that give rise to the alleged harm. Instead, it's a diatribe and opinion piece masquerading as a lawsuit. Moreover, Plaintiff repeatedly ascribes the various references and claims generically to all Defendants grouped together in one category. Again, this makes it difficult, if not impossible, to identify which claim is directed towards which specific Defendant or when such claim is alleged to have occurred. Pleading in this fashion creates an unjustified burden on the defendants who are required to sift through all of these pages in an attempt to identify allegations to which they are required to respond.

For these reasons, it is indisputable that the Amended Complaint fails at the most fundamental level and runs afoul of Rule 8. Thus, this case should be summarily dismissed in its entirety.

## I. Defendants Did Not Violate Plaintiff's Civil Rights And Are Entitled To Qualified Immunity

Defendants are entitled to Qualified Immunity from Plaintiff's claims because defendants who are sued in their individual capacities in an action under 42 U.S.C. § 1983 "are entitled to qualified immunity unless it is demonstrated that their conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Co*, 186 F.3d 1238, 1251 (10th Cir. 1999). Further, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). There is a presumption in favor of immunity for public officials in their individual capacities. *Hidahl v. Gilpin County Dept. of Social Services*, 938 F.2d 1150 (10th Cir. 1991). Qualified immunity may be denied only "if, on an objective basis, it is _obvious_ that _no reasonably competent officer_ would have concluded" that the conduct was lawful at the time the defendant acted. *Malley* at 341.

Once the defense of qualified immunity has been raised, the burden shifts to the plaintiff to show that it is not applicable. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). This is a heavy two-part burden. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) ("the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity."). In order to prevail on her claim for relief under §1983, Plaintiff must establish that Defendants' conduct deprived her of a federal constitutional or statutory right and that the conduct complained of was committed under color of state law. *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). State actors, such as Defendants, "may only be held liable under § 1983 for their own acts." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the United States Supreme Court held that the doctrine of qualified immunity is designed to protect government officials from actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The objective test adopted in *Harlow* to determine whether qualified immunity applies was intended to shield public officials from undue interference in the performance of their duties and to permit the defeat of insubstantial claims without the cost and disruption attendant to trial. *Powell v. Mikulecky*, 891 F.2d 1454, 1556 (10th Cir. 1989). As a result, qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818).

The United States Supreme Court's decision in *Harlow v. Fitzgerald* raises a presumption in favor of immunity for public officials acting in their individual capacities. *Hidahl v. Gilpin*

*County Dept. of Social Services*, 938 F.2d 1150, 1155 (10th Cir. 1991). The courts have held in this regard that there is a "strong presumption" that qualified immunity will apply and that state actors have properly discharged their official duties and to overcome that presumption the plaintiff must present specific allegations and clear evidence to the contrary. *See Gardenhire v. Schubert,* 205 F.3d 303, 313 (6th Cir. 2000); *see also Hidahl* at 1155. The United States Supreme Court has explained that qualified immunity may be denied only "if, on an objective basis, it is *obvious* that *no reasonably competent officer* would have concluded" that the conduct was lawful at the time the defendant acted. M*alley v. Briggs*, 475 U.S. at 341 (emphasis added).

In addition, the Supreme Court has explained that "clearly established law" must be precise:

> [t]oday, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.' *Ashcroft v. al–Kidd,* 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.' *Id.,* at 639, 107 S.Ct. 3034.

*White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017).

Further, courts

> …may address the two prongs of the qualified-immunity analysis in either order: "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016), *cert. denied*, —— U.S. ——, 137 S.Ct. 2151, 198 L.Ed.2d.

*Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019).

In the case at bar, Plaintiff's Amended Complaint fails to remotely demonstrate that Defendants violated any of her rights and thus the inquiry ends there and Defendants are entitled to Qualified Immunity.

## III.  Conclusion

As clearly shown above, Plaintiff's claims against Defendants must be dismissed. And the infirmities plaguing Plaintiff's Amended Complaint cannot be cured by amendment and should result in dismissal with prejudice.

Respectfully submitted,

*s/ John K.F. Langford*
John K.F. Langford (OBA #21012)
Assistant General Counsel
Department of Human Services
P.O. Box 25352
Oklahoma City, OK 73125-0352
Telephone: (405) 521-3638
Facsimile: (405) 521-6816
E-mail: John.Langford@okdhs.org

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2025 the foregoing document was electronically submitted to the Clerk of the Court using the ECF System for filing.

*s/ John K.F. Langford*
John K.F. Langford