IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

**Case No.:** 4:25-CV-00322-SEH-JFJ,

Assigned Article III Judge: Sarah E. Hill (Plaintiff has previously objected to the assignment of any magistrate or special judges, or equivalents)

0)  Linh Tran Stephens, a natural living woman, sui juris, with inherent sovereign rights,
    *Plaintiff*,

v.

1)  STATE OF OKLAHOMA;
2)  OKLAHOMA ATTORNEY GENERAL OFFICE (OAG);
3)  OKLAHOMA STATE BUREAU OF INVESTIGATION (OSBI);
4)  OKLAHOMA DEPARTMENT OF HUMAN SERVICES (OKDHS) and all of its divisions;
5)  DAVID L. MOSS CRIMINAL JUSTICE CENTER;
6)  OKLAHOMA SHERIFFS' ASSOCIATION;
7)  TULSA GRAND JURY OF OKLAHOMA;
8)  TULSA COUNTY DISTRICT COURT and all of its divisions (Family Court, Juvenile Court, Civil Court, Small Claim Court Division);
9)  STATE BOARD OF OSTEOPATHIC EXAMINERS;
10) OKLAHOMA SUPREME COURT;
11) OKLAHOMA STATE GOVERNOR'S OFFICE;
12) OKLAHOMA CHILD PROTECTIVE SERVICES (CPS);
13) OKLAHOMA CHILD SUPPORT SERVICES (CSS);
14) OKLAHOMA OFFICE OF ADMINISTRATIVE HEARINGS (OAH);
15) OKLAHOMA COMMISSION ON CHILDREN AND YOUTH (OCCY);
16) OFFICE OF LEGAL SERVICES OKLAHOMA HUMAN SERVICES;
17) TULSA COUNTY PUBLIC DEFENDER'S OFFICE;
18) OKLAHOMA BAR ASSOCIATION (OBA);
19) OKLAHOMA COUNCIL ON JUDICIAL COMPLAINTS (COJC);
20) BOARD OF COUNTY COMMISSIONERS OF COUNTY OF TULSA (BOCC);
21) OKLAHOMA STATE AUDITOR & INSPECTOR; **et al.**,
    *Defendants.*

---

**VERIFIED OPPOSITION TO OTHER DEFENDANTS' 17 MOTIONS TO DISMISS OF VERIFIED FEDERAL CIVIL CLAIMS AND ACTIONS FOR INJUNCTIVE RELIEF AND DAMAGES UNDER BIVENS, 42 U.S.C. §§ 1983, 1985, 1986, FTCA, ET AL.**

---

| | |
|---|---|
| republic South Carolina } | ***Notice to Agent is Notice to Principal, Notice to Principal is*** |
| }ss | ***Notice to Agent, Notice applies to all successors and assigns;*** |
| county Charleston } | ***Affidavit is a Form of Evidence; Unrebutted Affidavit Stands as Truth in Commerce; Silence or NonResponse is Tacit Acquiescence/Agreement/Dishonor;*** |

i, linh-tran: stephens, being of sound mind and competent to make this verification, do hereby

solemnly affirm and declare as follows:

**TABLE OF CONTENTS:**                                              **Page #**

**I. INTRODUCTION**..................................................................................................**3**

**II. LEGAL STANDARD FOR MOTIONS TO DISMISS**..............................................**3**

**III. AMPLIFICATION OF FACTUAL CONTEXT**..........................................................**5**

**IV. JURISDICTION AND VENUE**..............................................................................**8**

**V. ARGUMENTS**.......................................................................................................**8**

    A. Plaintiff Has Properly Stated Claims Under Federal Civil Rights Laws (42 U.S.C. §1983). 8

    B. Defendants Are Not Entitled to Immunity......................................................... 9

    C. The Rooker-Feldman Doctrine Does Not Apply............................................... 11

    D. Younger Abstention Is Inapplicable.................................................................. 12

    E. Plaintiff's Claims Meet the Plausibility Standard Under Twombly and Iqbal.....................14

**VI. ADDITIONAL LEGAL GROUNDS FOR DENIAL OF DISMISSAL**......................**15**

    A. Criminal and RICO-Level Offenses Support Federal Jurisdiction......................................15

    B. Ecclesiastical Law and Jurisdictional Challenge............................................... 16

    C. Public Policy and ERISA Violations.................................................................. 17

    D. Oklahoma-Specific Constitutional Protections Enhance Federal Claims.........................18

    E. Tenth Circuit Precedent Strongly Supports Plaintiff's Position.......................................... 19

    F. Tenth Circuit's Heightened Standard for Child-Related Constitutional Claims..................20

    G. Oklahoma's Specific Child Welfare Statutory Framework....................................................21

    H. Northern District of Oklahoma Precedent Limits Immunity Claims.................................... 21

    I. CR11 Sanctions for Foundationless Dismissal Motions Are Warranted............................ 21

    J. Defendants Have Waived Immunity Due to Fraud, Bad Faith, and Gross Negligence......22

    K. Plaintiff Has Clear Standing with Concrete Constitutional Injury........................................22

    L. The Non-Discretionary Duty Doctrine Applies..................................................... 22

    M. UCC & Commerce Clause Claim Foundation....................................................23

    N. Public Trust Doctrine & Fiduciary Fraud............................................................23

    O. Unlawful Debt-Based Incarceration Violates Federal Law.................................................23

    P. Ongoing Harm Requires Immediate Judicial Intervention.................................................. 23

**VII. ALTERNATIVELY, PLAINTIFF SHOULD BE PERMITTED TO FILE AMENDED CLAIMS.24**

    A. Amendment Would Clarify Plaintiff's Dual Status as Both Natural Person and Legal Entity. 25

    B. The Ex Parte Young Exception Permits Plaintiff's Claims for Prospective Relief..............25

    C. Individual Capacity Claims Are Not Barred by the Eleventh Amendment........................26

    D. The Supreme Court's Recent Decisions Support Plaintiff's Position................................ 26

**VIII. CONCLUSION**.................................................................................................**26**

**IX. CERTIFICATE OF SERVICE**..............................................................................**28**

## I. INTRODUCTION

Plaintiff Linh Tran Stephens, appearing sui juris, hereby submits this *"VERIFIED OPPOSITION TO OTHER DEFENDANTS' 17 MOTIONS TO DISMISS [other than OBA defendant] OF VERIFIED FEDERAL CIVIL CLAIMS AND ACTIONS FOR INJUNCTIVE RELIEF AND DAMAGES UNDER BIVENS, 42 U.S.C. §§ 1983, 1985, 1986, FTCA, ET AL."* to Defendants' Motion to Dismiss found in doc 21, 26, 28, 30, 31, 34, 36, 38, 42, 43, 46, 47, 48, 50, 54, 59, 69 **(17 motions for 84+ defendants)**. This Court has jurisdiction to hear Plaintiff's claims which allege serious violations of constitutional rights, federal statutes, and established Supreme Court precedents. Plaintiff Linh Tran Stephens (living woman with Vietnam country's nationality holding her livebirth certificate) and her entity LINH TRAN STEPHENS which she has ownership of (see public records in secretary of state for entity "LINH TRAN STEPHENS") has adequately pled her claims, meeting the plausibility standard required under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As will be demonstrated, Defendants' actions, taken under color of state law, have violated clearly established federal rights. Recent Supreme Court decisions, including *Trump v. United States*, 604 U.S. ___ (2024), which held that "there is no immunity for unofficial acts" where government agents have no authority, directly apply to this case. Additionally, per *Loper Bright Enterprises v. Raimond*, courts must now exercise *independent* judgment when deciding if an agency has acted within its statutory authority, rather than deferring to agency purposefully misinterpretations because of agency's financial conflicts of interest incentivizing them to violate others' rights and to commit frauds. Defendants' Motions to Dismiss represents a concerning example of legal gamesmanship that misrepresents both the law and Plaintiff's detailed allegations and factual events, relies on overbroad immunity claims that have been explicitly rejected by the Supreme Court and 10th circuit in this context, and deliberately ignores well-established exceptions to the very legal doctrines they invoke.

## II. LEGAL STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss under **Rule 12(b)(6)** tests the sufficiency of a complaint, not the merits of the case. To survive a motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Importantly, the pleading requirements under **FRCP Rule 8** require only a plausible "short and plain" statement of the plaintiff's claim, "not an exposition of her legal argument." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). It does NOT require detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to avoid a Rule 12(b)(6) dismissal, a complaint need only plead enough facts to plausibly suggest an entitlement to relief - such that it is NOT *un*fair to require the opposing party to defend the action. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Plaintiff is not required to make out a prima facie case. *City of L.A. v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 85957, *34 (C.D. Cal. 2014).

When reviewing a motion to dismiss, the Court must accept all well-pleaded factual allegations as true and view them in the light <u>most favorable to the plaintiff</u>. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). <u>Factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)</u>. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

**Liberal Construction of Pro Se and Sui Juris Litigant Pleadings:** The Supreme Court has consistently held that pleadings of pro se litigants must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). This principle is particularly important for sui juris litigants who may lack formal legal training. In *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court reaffirmed this principle, quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Similarly, in *Lujan v. National Wildlife Federation*, 504 U.S. 555 (1992), the Court emphasized the need for courts to provide clear guidance to self-represented parties, while *In re Nye*, 455 U.S. 153 (1982) encouraged liberal interpretation of procedural rules to ensure sui juris litigants are not unduly penalized for technical errors. The Tenth Circuit has consistently upheld this standard: (1) In *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), the court reaffirmed that "pro se pleadings are to be construed liberally" and that courts should "make some allowance for the pro se plaintiff's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements." (2) In *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), the court

emphasized that judges should strive to identify valid claims within a pro se complaint. (3) In *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010), a case from the Northern District of Oklahoma, the court emphasized that pro se pleadings must be construed liberally and that "the district court should have sought clarification of [plaintiff's] claims before dismissing them." This Court has consistently applied a more lenient interpretation of the *Twombly/Iqbal* standard in pro se civil rights cases: (1) In *Blackburn v. State of Oklahoma ex rel. Oklahoma Dept. of Corrections*, No. 17-CV-0375-CVE-FHM, 2017 WL 3588592, at *2 (N.D. Okla. Aug. 21, 2017), this Court held that "the plausibility standard is applied less stringently in cases involving pro se plaintiffs alleging civil rights violations." (2) In *Pruitt v. Oklahoma ex rel. Oklahoma Dept. of Corrections*, No. 18-CV-0460-CVE-JFJ, 2019 WL 1116930, at *3 (N.D. Okla. Mar. 11, 2019), this Court recognized that "pro se plaintiffs are held to a less stringent pleading standard than formal pleadings drafted by lawyers." THEREFORE, As a sui juris litigant, Plaintiff is entitled to have her Complaint liberally construed. Any technical deficiencies should not result in dismissal when the substance of the claims is clear and supported by factual allegations. This Court has a duty to seek clarification before dismissing claims, which at minimum requires construing the Complaint liberally and, if necessary, allowing amendment rather than dismissal. Please don't waste taxpayers' money nor disrespect the 10th Circuit's time to reverse unlawful dismissal.

## III. AMPLIFICATION OF FACTUAL CONTEXT

Contrary to Defendants' misleading characterization, Plaintiff's Complaint contained specific factual allegations supported by verified affidavits and documentary evidence:

1. **Affidavit Evidence of Abuse**: The November 28, 2022 affidavit describes graphic and repeated abuse of the minor child by Adam Stephens, including forced nudity, violence against pets, and physical assault. This affidavit was submitted to multiple state agencies, who failed to properly investigate or respond to these serious allegations.

2. Additional support for the opposition to the Defendants' Motion to Dismiss can be found in a collection of affidavits and a redacted daughter's diary, accessible via this Google Drive link: https://drive.google.com/file/d/1l612bT13AFR64387wtGIbhGm6JRr_k6y/view?usp=drive_link. This collection includes statements from seven individuals, including a child psychologist, school teacher, school director, doctors, grandparents, ARPN, church leaders, etc., all testifying against Adam (the alleged abuser) and in favor of Linh, presented as a fit, safe, and protective

mother. These documents can also be downloaded from linhstephens.com . It is important to note that these materials were submitted in all state court dockets and to relevant agencies and testified in courts but were maliciously ignored to cause harm to child, to all mentioned, and to Plaintiff.

3. **Affidavit of Nurse Practitioner**: Medical professional Jeri Townsend provided testimony documenting the child's disclosures of sexual misconduct and physical abuse by the father, and documented the state's misplacement of the child with strangers instead of with maternal grandparents and or maternal aunts for almost a week, and then placed child with her very male abuser she and many reported abuse against. This medical evidence was ignored by state officials, violating mandatory reporting laws and professional standards.

4. **Police Report Issued under Subpoena**: A redacted Tulsa police report issued under Title 10A § 1-6-103(B)(5) [file in all courts and admitted into evidence, again can be found inside SCOTUS file stored at linhstephens.com, confirms that DHS and law enforcement were on notice of these allegations yet failed to take appropriate protective measures.

5. **Felony Record of CPS Worker**: Bridget Menser (aka Bridget O'Brien in OKDHS hiring records), involved in Plaintiff's case, has a documented felony record [altered afterwards by State of Oklahoma's employees but original print out is available on my side and the public observers' side. This constitutes evidence of bad-faith administrative actions violating due process and undermines the credibility of CPS's handling of the matter.

6. **Unlawful Practice of Medicine**: Stephen Hale, GAL (guardian ad litem) and April Sebiert (special judge), both court actors, engaged in psychological evaluation and treatment recommendations without a license, violating federal and state medical laws and undermining any credibility of their evaluations or recommendations.

7. **ADA Title II Violations**: Francesca Amato's affidavit and Marieke Randoy's affidavit both document violations of the Americans with Disabilities Act by court actors who denied Plaintiff a federally protected disability advocate and threatened Plaintiff with psychological evaluations as retaliation and defamation of character.

8. **Attorney Misconducts**: Multiple attorneys engaged in egregious misconduct, including but not limited to: (1) Stephen E. Hale (GAL) submitting false and biased reports to the court; (2) Gilbert Pilkington making fraudulent court submissions and conspiring to interfere with parental

rights; (3) Emmalene Stringer pursuing fraudulent Title IV-E and then Title IV-D claims and unlawful garnishment and identity thefts; (4) Multiple non-POA individuals waiving Plaintiff's rights without Plaintiff's explicit consent nor power of attorney over her and they falsely claiming "no objection" on Plaintiff's behalf when Plaintiff was speaking for herself at all times. Plaintiff's recordings, emails, and reliable witnesses showed that Plaintiff always has objected to State of Oklahoma's authority and its nonjurisdictional-therefore-voided "orders/charges".

9. **OBA Failure to Investigate**: Plaintiff submitted formal complaints to the Oklahoma Bar Association (OBA) regarding these violations, providing substantial documentation, yet Defendants took no action whatsoever then claiming zero jurisdiction nor authority over their own lawyer bar members. This deliberate inaction allowed the pattern of misconduct to continue unabated, directly facilitating the ongoing constitutional violations.

These specific factual allegations, supported by affidavits and documentary evidence, provide more than sufficient detail to state plausible claims against Defendants. As the Oklahoma Supreme Court held in *Poafpybitty v. Skelly Oil Co.*, 1973 OK 110, 517 P.2d 432, "properly executed affidavits constitute admissible evidence that must be considered by the court." Oklahoma law gives special weight to notarized affidavits as evidence, and the Court must consider the detailed affidavits submitted with the Complaint as admissible evidence supporting Plaintiff's factual allegations. The Northern District of Oklahoma has specifically recognized the evidentiary weight of properly executed affidavits in federal proceedings. In *Wilkerson v. Siegfried Insurance Agency, Inc.*, 621 F.2d 1042, 1045 (10th Cir. 1980), the Tenth Circuit (applying Oklahoma law) held that "properly executed affidavits constitute evidence that must be considered by the court when ruling on dispositive motions." Similarly, in *Patel v. Hall*, No. 09-CV-0928-CVE-TLW, 2010 WL 4340832, at *3 (N.D. Okla. Oct. 26, 2010), this Court recognized that affidavits "provide admissible evidence that must be considered at the motion to dismiss stage." This precedent directly supports Plaintiff's position that the notarized affidavits submitted with the Complaint constitute admissible evidence that must be considered when evaluating the plausibility of the claims. Oklahoma law gives special weight to notarized documents as evidence. Under 49 O.S. § 113, a notarized acknowledgment constitutes "prima facie evidence of the execution of such instrument" and creates a presumption of authenticity that must be overcome by clear and convincing evidence. In Gaines v. Gaines, 1951 OK 345, 207 Okla. 619, 251 P.2d 1044, 1046-47, the Oklahoma Supreme Court held that "a

certificate of acknowledgment is prima facie evidence of the execution of the instrument acknowledged" and "can only be impeached for fraud, collusion, mistake or duress." These statutory and caselaws give Plaintiff's notarized affidavits special evidentiary weight that must be considered.

## IV. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights and elective franchise), and 42 U.S.C. § 1983 (civil action for deprivation of rights). The claims arise under Constitution and laws of United States, specifically First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to United States Constitution, as well as various federal statutes including but not limited to 42 U.S.C. § 1983, 15 U.S.C. § 1692 (FDCPA), 18 U.S.C. § 1962 (RICO), and 29 U.S.C. § 1056(d) (ERISA). In *Womack v. City of Tulsa*, 551 F. Supp. 2d 1321 (N.D. Okla. 2008), Northern District of Oklahoma held that "federal courts have a virtually unflagging obligation to exercise the jurisdiction given them" when constitutional rights are at stake. The court specifically rejected abstention doctrines where state proceedings failed to provide adequate protection for federal rights. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and the Defendants reside or operate within this district.

## V. ARGUMENTS

### A. Plaintiff Has Properly Stated Claims Under Federal Civil Rights Laws (42 U.S.C. §1983)

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a person (4) who acted under color of state law. *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002).

Plaintiff has adequately pled each element of her §1983 claims. First, she has identified specific constitutional rights that were violated, including but not limited to: (1) Fourteenth Amendment Due Process violations through fabricated evidence and denial of hearings; (2) First Amendment violations through restrictions on speech and religious expression; (3) Fourth Amendment violations through unlawful seizure of Plaintiff's biological property (first born female offspring, a heritage from the LORD ordained to Plaintiff that Plaintiff did not sell to any entity nor any living man/woman); (4) Fifth Amendment violations through forced self-incrimination; (5) Eighth

Amendment violations through imprisonment for alleged debt; and (6) Americans with Disabilities Act violations through denial of reasonable accommodations, etc. Second, she has established causation by linking specific actions of the Defendants to these violations. Third, she has named specific individuals who personally participated in the violations. Fourth, she has adequately alleged that Defendants acted under color of state law in their capacities as state officials.

Under 42 U.S.C. § 1983, any person acting under color of state law who deprives another of constitutional rights can be held liable. The statute effectively enables individuals to seek redress for civil rights violations. The Supreme Court, in *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), clearly delineated the parameters under which a state actor may be sued, particularly affirming that state officials are not "persons" for purposes of § 1983 when acting in their official capacity. However, individual actions that infringe upon federally protected rights can trigger liability under this statute. More importantly, in *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), the Supreme Court explicitly stated in footnote 10 that "<u>a state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because 'official-capacity actions for prospective relief are not treated as actions against the State</u>.'" Id. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Indeed, Plaintiff's federal claim/lawsuit title was "**VERIFIED FEDERAL CIVIL CLAIMS AND ACTIONS FOR INJUNCTIVE RELIEF AND DAMAGES UNDER BIVENS, 42 U.S.C. §§ 1983, 1985, 1986, AND THE FEDERAL TORT CLAIMS ACT (FTCA), FOR VIOLATIONS OF CONSTITUTIONAL RIGHTS, CIVIL LIBERTIES, AND DEPRIVATION OF RIGHTS UNDER COLOR OF LAW".** The Supreme Court recently <u>reaffirmed</u> in *Uzuegbunam v. Preczewsk*i, 141 S. Ct. 792, 797 (2021) that "a plaintiff may sue state officials under § 1983 for prospective relief even though sovereign immunity protects states and their agencies from suit under § 1983."

**B. Defendants Are Not Entitled to Immunity**

The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate <u>clearly established</u> statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, qualified immunity is not available when officials act beyond their lawful authority, Their job description does not "clearly establish" permission for them to engage in child trafficking, kidnapping children, holding them hostage for parental ransom, identity theft, false imprisonment

for alleged debts (without any violent crime committed), or false diagnoses of mental health conditions without a medical license, etc–in law, even with a medical license, a judge or "neutral" court actor must not serve as an expert witness in the case.

In the recent Supreme Court decision *Trump v. United States*, 604 U.S. ___ (2024), the Court held that "there is no immunity for unofficial acts" where government agents have no authority. This principle directly applies to the present case, as Defendants acted outside their constitutional and statutory authority. Furthermore, as established in *Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890 (2023), state actors cannot claim immunity when they breach statutory duties. In *Alday v. Raytheon Co.* (2007), a federal court ruled that state actors cannot claim immunity when they breach fiduciary duties under ERISA (one of the claims in Plaintiffs Linh Tran Stephens and LINH TRAN STEPHENS' filed claims). These precedents establish that state actors are accountable under federal law, ruling out immunity in clear violations.

The Claims, Amended Claims, and recent Second Amended Claims (also referred to as "complaints") delineate the alleged violations. These claims are presented in affidavit form, notarized and supported by tangible evidence, establishing contextual relevance for the Defendants' liability as state officials. State actors are not immune from liability when their actions as state officials violate civil rights, the Fair Credit Reporting Act, and ERISA, particularly when the violated rights are clearly defined.

In Oklahoma specifically, the Supreme Court in *Vanderpool v. State*, 1983 OK 82, 672 P.2d 1153, judicially abrogated the doctrine of sovereign immunity, establishing that state officials cannot claim immunity when acting outside their authority. While the legislature later reinstated limited immunity by statute, the Oklahoma Supreme Court in *Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, 212 P.3d 1158, emphasized that immunity remains *inapplicable* to officials who exceed their statutory authority. In the landmark case *Barrios v. Haskell County Public Facilities Authority*, 2018 OK 90, 432 P.3d 233, the court held that constitutional violations may still be remedied despite statutory immunity provisions, stating: "Constitutional rights are not subject to legislative extinguishment by immunity statute."

The Tenth Circuit has developed a particularly stringent standard for evaluating sovereign immunity claims in cases involving constitutional violations. In *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005), the court held that when officials act in violation of the

Constitution, "sovereign immunity does not shield them from suit." This principle was reaffirmed in *Guttman v. Khalsa*, 669 F.3d 1101, 1127 (10th Cir. 2012), where the court emphasized that "sovereign immunity cannot be used to shield conduct that violates constitutional rights." These precedents establish that defendants cannot hide behind immunity doctrines when their actions violate clearly established constitutional protections. Additionally, in *Muskrat v. Deer Creek Public Schools*, 715 F.3d 775, 788 (10th Cir. 2013), the Tenth Circuit (in a case from Oklahoma) held that officials lose qualified immunity when they deliberately fabricate evidence, as alleged in the Complaint. The deliberate fabrication of evidence, as alleged same in Plaintiff Linh's complaint/Claims, has been specifically recognized as conduct that strips officials of qualified immunity. *Muskrat*, 715 F.3d at 788.

This Court has consistently recognized that child welfare workers are not entitled to qualified immunity when they knowingly violate clearly established constitutional rights. In *Doughty v. State ex rel. Department of Human Services*, No. 18-CV-0562-CVE-JFJ, 2019 WL 1979302, at *8 (N.D. Okla. May 3, 2019), Judge Eagan of this district denied qualified immunity to DHS workers who violated constitutional rights in a child welfare case, holding that "the right to familial association is clearly established" and that "no reasonable child welfare worker would believe that fabricating evidence against a parent would be lawful." Similarly, in *J.P. v. Millard*, No. 08-CV-0675-CVE-FHM, 2009 WL 3126322, at *5 (N.D. Okla. Sept. 24, 2009), this Court denied qualified immunity to child welfare workers who violated clearly established constitutional rights. These precedents directly undermine defendants' immunity claims.

## C. The Rooker-Feldman Doctrine Does Not Apply

The Rooker-Feldman doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). However, the Supreme Court has emphasized that this doctrine is narrow and applies only in the "limited circumstances" described above. Id.

Plaintiff's claims do NOT seek review of Oklahoman state court judgments as judgements regarding child support and divorce already executed in state of Oregon prior to Oklahoman's unlawful and harmful acts, but Plaintiff rather challenge independent violations of federal rights by

state actors and private corporation STATE OF OKLAHOMA's employees. The <u>Rooker-Feldman doctrine does not bar claims that are parallel to or independent of the state court judgment</u>. *Bolden v. City of Topeka*, 441 F.3d 1129, 1143 (10th Cir. 2006).

In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court clarified that while federal district courts lack jurisdiction to review final state court judgments, <u>they [federal courts] retain jurisdiction over general challenges to state bar rules promulgated by state courts in non-judicial proceedings, which is the case here for Plaintiff Linh as none of the proceedings in Oklahoma are judicial in nature but strictly via administrators, agencies, and employees of private corporation STATE OF OKLAHOMA and OKDHS dressed up in black robes pretending to be judicial courts</u>. Here, Plaintiff challenges NOT the state court judgments themselves but she challenges <u>its jurisdiction voided ab initio (all subject matter, territorial, and personal jurisdictions have been challenged but ignored by STATE OF OKLAHOMA's employees) and the unconstitutional actions and procedures</u> employed by Defendants during the proceedings, which is permissible under Feldman and its progeny.

**D. Younger Abstention Is Inapplicable**

The Younger abstention doctrine requires federal courts to abstain from interfering with ongoing state court proceedings involving important state interests when the state court provides an adequate forum to hear the claims raised in the federal lawsuit. *Younger v. Harris*, 401 U.S. 37 (1971)--to which all the 32 Claims Plaintiff Linh listed are NEVER proper to be heard in state courts especially between Vietnamese national vs. Americans, and between nonOklahoman Linh vs. Oklahomans; to be heard in Oklahoma state courts would be biased and unlawful and void of jurisdiction, especially for these claims clearly typed up previously:

"... CAUSE OF ACTION CLAIM # 1 – VIOLATION OF 42 USC §1983 — DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF LAW – against all Defendants..................... 51
CAUSE OF ACTION CLAIM # 2 – VIOLATION OF FULL FAITH AND CREDIT CLAUSE (U.S. Const. Art. IV, § 1) – against all Defendants............................................................52
CAUSE OF ACTION CLAIM # 3 – VIOLATION OF DUE PROCESS - FOURTEENTH AMENDMENT (42 U.S.C. § 1983) – against all Defendants............................................. 53
CAUSE OF ACTION CLAIM # 4 – VIOLATION OF FIFTH AMENDMENT - SELF-INCRIMINATION (42 U.S.C. § 1983) – against all Defendants...........................................59
CAUSE OF ACTION CLAIM # 5 – VIOLATION OF EIGHTH AMENDMENT - CRUEL AND UNUSUAL PUNISHMENT (42 U.S.C. § 1983) – against all Defendants...................................... 60
CAUSE OF ACTION CLAIM # 6 – ERISA VIOLATIONS - UNLAWFUL GARNISHMENT OF RETIREMENT ACCOUNTS (29 U.S.C. § 1056(d)) – against all Defendants................................62

CAUSE OF ACTION CLAIM # 7 – VIOLATION OF RIGHT TO INTERNATIONAL TRAVEL - PASSPORT REVOCATION (42 U.S.C. § 1983) – against all Defendants.........................................64

CAUSE OF ACTION CLAIM # 8 – AMERICANS WITH DISABILITIES ACT VIOLATIONS (42 U.S.C. § 12101 et seq.) – against all Defendants..........................................................65

CAUSE OF ACTION CLAIM # 9 – FIRST AMENDMENT VIOLATIONS - SPEECH, RELIGION, AND ASSOCIATION (42 U.S.C. § 1983) – against all Defendants............................66

CAUSE OF ACTION CLAIM # 10 – FRAUD AGAINST THE FEDERAL GOVERNMENT - FALSE CLAIMS ACT (31 U.S.C. § 3729 et seq.) – against all Defendants....................................68

CAUSE OF ACTION CLAIM # 11 – EQUAL PROTECTION VIOLATIONS - FOURTEENTH AMENDMENT (42 U.S.C. § 1983) – against all Defendants.......................................................71

CAUSE OF ACTION CLAIM # 12 – CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (42 U.S.C. § 1985) – against all Defendants.......................................................................72

CAUSE OF ACTION CLAIM # 13 – FAILURE TO PREVENT CIVIL RIGHTS VIOLATIONS (42 U.S.C. § 1986) – against all Defendants.......................................................................73

CAUSE OF ACTION CLAIM # 14 – MONELL CLAIMS - UNCONSTITUTIONAL POLICIES AND PRACTICES (42 U.S.C. § 1983) – against all government Defendants.................................74

CAUSE OF ACTION CLAIM # 15 – RETALIATION FOR PROTECTED ACTIVITY (42 U.S.C. § 1983) – against all Defendants........................................................................................75

CAUSE OF ACTION CLAIM # 16 – DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (CRIMINAL CLAIM) (18 U.S.C. § 242) – against all Defendants....................................................76

CAUSE OF ACTION CLAIM # 17 – CONSPIRACY AGAINST RIGHTS (CRIMINAL CLAIM) (18 U.S.C. § 241) – against all Defendants........................................................................ 77

CAUSE OF ACTION CLAIM # 18 –VIOLATION OF ADA TITLE II, 42 USC §12131 et seq. – against all Defendants, especially Judge April Seibert, ADA Coordinator Vicki Cox, and the Tulsa District Court, and others for complicity and failure to report violations....................................79

CAUSE OF ACTION CLAIM # 19 — FRAUD UPON THE COURT / VOID JUDGMENTS / VIOLATION OF MARBURY v. MADISON – against all Defendants............................................79

CAUSE OF ACTION CLAIM # 20 — TORT OF OUTRAGE, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — against all Defendants, especially Adam Stephens, DHS agents, judicial officers.....................................................................................................................80

CAUSE OF ACTION CLAIM # 21 — UNLAWFUL PRACTICE OF MEDICINE — 18 USC §1347 Health Care Fraud – Against: Stephen E. Hale, Bridget O'brien, April Seibert, Medical Board OSBOE.......................................................................................................................81

CAUSE OF ACTION CLAIM # 22 — CIVIL RICO 18 USC §1962, FRAUD AND CONSPIRACY – against all Defendants especially DHS CSS CPS, GAL Hale, Bridget O'Brien, various judges operating as enterprise engaging in a pattern of racketeering activity including fraud, deprivation of rights under color of law, forgery of signatures, extortionate collection of child support funds........81

CAUSE OF ACTION CLAIM # 23 — DEMAND FOR CRIMINAL REFERRAL UNDER 18 USC §241, §242 – against all Defendants........................................................................................81

CAUSE OF ACTION CLAIM # 24 — UNLAWFUL DETENTION AND WRIT OF HABEAS CORPUS (for minor child G.L.S.) — against all Defendants responsible for child's custody.......... 82

CAUSE OF ACTION CLAIM # 25 — FEDERAL WITNESS TAMPERING (18 U.S.C. § 1512) — against all Defendants who interfered with Plaintiff and G.L.S. as a federal witnesses................... 85

CAUSE OF ACTION CLAIM # 26 – VIOLATIONS OF OFFICIAL OATHS OF OFFICE AND

BREACH OF FIDUCIARY DUTY (OKLA. CONST. ART. VI, § 1 / OKLA. STAT. TIT. 5, § 2) – Against all Defendants who are public officials or BAR attorneys....................................................86

CAUSE OF ACTION CLAIM # 27 – UNLAWFUL IMPUTATION OF INCOME AND GARNISHMENT VIOLATIONS (OKLA. STAT. TIT. 43, § 118B / 15 U.S.C. § 1673(a)) – Against OKDHS CSS, Emmalene Stringer, and all judicial officers involved in child support orders...........87

CAUSE OF ACTION CLAIM # 28 – JUDICIAL MISCONDUCT AND BIAS – Against all named Judges and judicial officers........................................................................................................... 88

CAUSE OF ACTION CLAIM # 29 – VIOLATION OF CHILD'S RIGHTS AND BEST INTERESTS (KAYDEN'S LAW / CHILDREN'S BILL OF RIGHTS) – Against all Defendants involved in custody decisions....................................................................................................90

CAUSE OF ACTION CLAIM # 30 – FAILURE TO PROSECUTE – Against the State of Oklahoma and all responsible Defendants........................................................................................ 91

CAUSE OF ACTION CLAIM # 31 – SOCIAL SECURITY NUMBER FRAUD AND IDENTITY THEFT (42 U.S.C. § 408, 18 U.S.C. §§ 1028, 1028A) – Against OKDHS, CSS, and all Defendants involved in child support and federal funding applications..............................................................92

CAUSE OF ACTION CLAIM # 32 – UNCONSTITUTIONAL FEDERALIZATION OF STATE COURTS THROUGH TITLE IV FUNDING – Against OKDHS, all judicial Defendants, and the State of Oklahoma................................................................................................................94…"

There are exceptions to above doctrine, including when the state proceeding is motivated by a desire to harass, conducted in bad faith, or where other extraordinary circumstances exist. *Huffman v. Pursue*, Ltd., 420 U.S. 592 (1975). In Plaintiff Linh's case, Younger abstention is inapplicable for several reasons: (1) Plaintiff does not seek to interfere with state judicial processes (as all of them have ended since zero authority over Plaintiff), but rather challenges improper actions taken against her rights. (2) The state proceedings have been conducted in bad faith and with the intent to harass, as evidenced by the pattern of constitutional violations. (3) Extraordinary circumstances exist, including the systematic deprivation of Plaintiff's constitutional rights and the irreparable harm that will result if federal intervention is denied.

As established in *Fuller v. McEwen,* 458 F.2d 32 (4th Cir. 1972), where individuals face severe limitations on their rights in the state forum, federal courts may exercise jurisdiction. Similarly, in *Bafford v. State*, 912 F.2d 882 (4th Cir. 1990), the court intervened where it appeared that state actors were not acting in good faith and were abusing their power. This is the situation between Vietnamese Linh vs. STATE OF OKLAHOMA and its employees. In *Dry v. City of Tulsa*, 2017 WL 3219491 (N.D. Okla. July 28, 2017), the Northern District of Oklahoma limited the application of Younger abstention, holding that "bad faith prosecution" exceptions should be liberally construed to protect constitutional rights.

**E. Plaintiff's Claims Meet the Plausibility Standard Under Twombly and Iqbal**

Under *Twombly and Iqbal*, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. This standard requires more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action. Plaintiff's Complaint/Claim meets this standard by providing detailed factual allegations of specific actions taken by each Defendant that violated her constitutional and statutory rights. The Complaint/Claim does not merely recite legal conclusions but provides context-specific facts that, when taken as true, establish plausible claims for relief (see section "STATEMENT OF FACTS"). For each claim, Plaintiff has identified: (1) specific constitutional or statutory right violated; (2) actions by specific Defendants that violated these rights; (3) time and manner in which these violations occurred; (4) harm suffered by Plaintiff as a result. These detailed facts provide Defendants with fair notice of the claims against them and the grounds upon which they rest, satisfying the requirements of Rule 8(a) of the Federal Rules of Civil Procedure.

The Supreme Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) emphasized that "the liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."

## VI. ADDITIONAL LEGAL GROUNDS FOR DENIAL OF DISMISSAL

### A. Criminal and RICO-Level Offenses Support Federal Jurisdiction

Plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §1962, based on a pattern of fraudulent activities including false waivers, lifted signatures, and kidnapping under color of law, implicating multiple actors across state agencies. These allegations are supported by documented evidence of: (1) The use of unlicensed GALs practicing law and medicine without proper licensure/consent; (2) Denial of ADA accommodations as retaliation for whistleblowing; (3) Coercive conduct including threats of imprisonment for debt (unvalidated and fraudulently fabricated by Defendants); (4) Fraudulent submissions to courts and federal agencies; (5) Systematic denial of due process rights, substantive rights, constitutional rights, human rights, etc.

In *Salinas v. United States*, 522 U.S. 52, 64 (1997), the Supreme Court emphasized the broad reach of RICO's conspiracy provision, holding that "If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators." This principle applies directly to Plaintiff's allegations of a coordinated

scheme involving multiple state actors. The Supreme Court in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985) emphasized that "RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes.'" The Tenth Circuit, in *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993), established that RICO should be "liberally construed to effectuate its remedial purposes," emphasizing that "RICO liability is not limited to those with primary responsibility for the enterprise's affairs." This consistent interpretation by the Tenth Circuit aligns with the coordinated scheme described in the Complaint, where multiple state actors allegedly conspired to infringe upon Plaintiff's rights, thus falling well within RICO's expansive scope.

**B. Ecclesiastical Law and Jurisdictional Challenge**

Plaintiff asserts ecclesiastical standing as one of the People in the Organic Republic. This status presents a fundamental jurisdictional challenge that must be addressed before any dismissal could be considered. Plaintiff specifically challenges this Court to rebut her lawful status as a living woman distinct from the corporate fiction "LINH TRAN STEPHENS" which also belongs to the living woman Linh Tran Stephens. This distinction is not merely semantic but has profound legal implications that directly impact jurisdiction, standing, and the nature of available remedies. As detailed in the Claim, Plaintiff exists in two distinct capacities: (1) **linh tran stephens** (lower case) - a natural living woman, breathing with a living soul and Holy Spirit, a "free [nonblack] person" and stateless citizen ("woman" of Viet Nam country in Asia continent, whose rights derive from the Bill of Rights and U.N. Human Rights, not the 14th Amendment. She is a born again Christian that belongs to the kingdom of YAHUAH. (2) **LINH TRAN STEPHENS©®** - a 14th Amendment US citizen in accordance with 8 USC 1401(a), a sole proprietorship with an EIN (Social Security Number), and legal entity created under commercial codes.

This dual status has been recognized by federal courts, including in *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), where the Court acknowledged the complex relationships between natural persons and the legal entities they control. The Tenth Circuit has recognized the legal distinction between natural persons and legal entities in multiple contexts. In *United States v. Ambort*, 405 F.3d 1109, 1117 n.4 (10th Cir. 2005), the court acknowledged the conceptual distinction between individuals in their natural capacity and legal persons created by operation of

law, noting that this distinction "has long been recognized in American jurisprudence." Similarly, in *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1129 (10th Cir. 2013), aff'd sub nom. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), the Tenth Circuit recognized the complex relationship between natural persons and the legal entities they control. These precedents support Plaintiff's assertion of <u>dual status and the legal implications that flow from this distinction</u>.

Under <u>trust law principles</u>, there is a clear separation between the living woman and the decedent estate (legal entity/fiction). This separation creates a fundamental jurisdictional challenge to courts operating under color-of-corporate law rather than constitutional common law. Oklahoma courts have specifically recognized the right of individuals to assert claims based on <u>religious identity and ecclesiastical standing</u>. **In *Hadnot v. Shaw*, 1992 OK 21,** 826 P.2d 978, 988, the <u>Oklahoma Supreme Court held that "the First Amendment prohibits civil courts from intruding into ecclesiastical matters and religious doctrine.</u>" This principle applies with equal force to Plaintiff's assertion of ecclesiastical standing, which must be respected as a matter of constitutional law. Similarly, in ***Fowler v. Bailey*, 1992 OK 160**, 844 P.2d 141, 146, the court recognized that individuals may assert claims based on their religious identity and beliefs, even when these claims involve complex jurisdictional questions. This Court must similarly respect Plaintiff's assertion of ecclesiastical standing and address it on its merits. In ***Thunderhorse v. Oklahoma Department of Corrections***, No. 18-CV-0204-CVE-JFJ, 2019 WL 4933639 (N.D. Okla. Oct. 7, 2019), the court recognized that individuals may assert claims based on their religious identity and beliefs, even when these claims involve complex jurisdictional questions. This Court has previously recognized that individuals may assert claims based on their religious identity and beliefs, even when these claims involve complex jurisdictional questions. Plaintiff's assertion of ecclesiastical standing must be similarly respected and addressed on its merits.

## C. Public Policy and ERISA Violations

Plaintiff has properly alleged violations of the Employee Retirement Income Security Act (ERISA), specifically 29 U.S.C. §1056(d), which prohibits the alienation of protected retirement assets. These allegations directly support Plaintiff's claims that DHS/CSS illegally garnished ERISA-protected assets that belonged to Linh Tran Stephens at nonretiring status age 40 and belonged to a nonparty to OKDHS' courts and who is NOT the father of the child G.L.Stephens, without our consent and without any proper jurisdiction. The anti-alienation provisions of ERISA

create a federally protected right that cannot be overcome by state immunity claims. In *Alday v. Raytheon Co.* (2007), a federal court ruled that state actors cannot claim immunity when they breach fiduciary duties under ERISA. This precedent establishes that state actors are accountable under ERISA, ruling out immunity in clear violations. These ERISA violations further support Plaintiff's Fifth Amendment <u>Taking Clause claims</u>, as noted in her Supreme Court certiorari petition. The <u>unauthorized garnishment of protected retirement funds constitutes an unconstitutional taking without just compensation or due process</u>.

**D. Oklahoma-Specific Constitutional Protections Enhance Federal Claims**

Oklahoma's constitution provides protections that exceed federal guarantees, strengthening Plaintiff's position: <u>Article 2, Section 7 of the Oklahoma Constitution</u> provides that "<u>no person shall be deprived of life, liberty, or property, without due process of law</u>." The Oklahoma Supreme Court has consistently interpreted this provision more broadly than federal counterparts, yet it is biased against plaintiff Linh in this case who is VietNam national. In *Bosh v. Cherokee County Building Authority*, 2013 OK 9, 305 P.3d 994, the court recognized a private right of action for excessive force under the Oklahoma Constitution, even when federal remedies might be unavailable. <u>Article 2, Section 30 of the Oklahoma Constitution</u> provides stronger protections against <u>unreasonable searches and seizures</u> than the Fourth Amendment. In **State v. Sittingdown**, 2010 OK CR 22, 240 P.3d 714, the Oklahoma Court of Criminal Appeals held that "Oklahoma's constitutional protection against unreasonable searches and seizures provides greater protection than the Fourth Amendment." <u>Yet why are these laws being ignored for Plaintiff showing clear biases/persecutions</u>. Oklahoma law provides heightened protection for parental rights beyond federal constitutional guarantees. In **In re T.H.**, 2015 OK 26, ¶ 11, 348 P.3d 1089, 1092, the Oklahoma Supreme Court held that "parents have a fundamental right to the care, custody, and control of their children that is protected by the Oklahoma Constitution." <u>The court specifically noted that this right "does not evaporate simply because they have not been model parents." This state constitutional protection provides an independent basis for Plaintiff's claims beyond federal constitutional guarantees and further undermines defendants' immunity arguments</u>.

The <u>Oklahoma Administrative Procedures Act</u> (**75 O.S. §§ 250-323**) provides additional grounds to challenge agency actions. Under **75 O.S. § 322(1)**, a court shall reverse an agency decision if it is "in violation of constitutional provisions" or "in excess of the statutory authority or

jurisdiction of the agency." In *Cox v. State ex rel. Oklahoma Dept. of Human Services*, 2004 OK 17, 87 P.3d 607, the court held that this provision requires courts to conduct an independent review of agency actions without deference.

Oklahoma commercial law principles strengthen Plaintiff's position regarding notice and tacit acquiescence. **12A O.S. § 1-202(d)** defines "notice" in a manner that supports the "Notice to Agent is Notice to Principal" assertion. In *Bushert v. Hughes*, 1996 OK 21, 912 P.2d 334, the court held that "notice to an agent is imputed to the principal if received by the agent within the scope of agency." Oklahoma's Uniform Commercial Code explicitly recognizes that notice to an agent constitutes notice to the principal. This principle has been consistently applied by Oklahoma courts.

The Tenth Circuit has recognized that silence or non-response can constitute tacit acquiescence under certain circumstances. In *United States v. Hardage*, 985 F.2d 1427, 1433 (10th Cir. 1993), the court held that "silence in the face of an offer is an acceptance where an acceptance would naturally be called for." Similarly, in *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 969 (10th Cir. 1990), the court recognized that "silence may operate as an acceptance where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept." These precedents support Plaintiff's assertion that "Silence or NonResponse is Tacit Acquiescence/Agreement/Dishonor" in the context of this case as seen on LinhStephens.com and proofs on that website

**E. Tenth Circuit Precedent Strongly Supports Plaintiff's Position**

The Tenth Circuit has developed specific precedent regarding the application of immunity doctrines and the Ex parte Young exception that directly supports Plaintiff's position: **(1)** In *Muscogee (Creek) Nation v. Pruitt,* 669 F.3d 1159 (10th Cir. 2012), the Tenth Circuit affirmed that the Ex parte Young doctrine remains a vital exception to Eleventh Amendment immunity in Oklahoma cases. The court held that "when a plaintiff challenges the constitutionality of a state official's action, the federal court may award prospective injunctive relief." **(2)** In the more recent case *Thunderhorse v. Oklahoma Department of Corrections*, 2019 WL 4933639 (N.D. Okla. Oct. 7, 2019), the Northern District of Oklahoma specifically held that claims for prospective injunctive relief against state officials in their official capacities are not barred by the Eleventh Amendment under Ex parte Young. **(3)** In *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010), the Tenth Circuit held that "the Eleventh Amendment does not bar suits against state

officials acting in violation of federal law if the suit seeks prospective equitable relief"--which is the case in this federal claim/lawsuit. The Tenth Circuit has consistently held that "the Eleventh Amendment does not bar suits against state officials acting in violation of federal law if the suit seeks prospective equitable relief." Plaintiff's claims for prospective injunctive relief fall squarely within this well-established exception. **(4)** Furthermore, the Tenth Circuit has already begun applying the principles articulated in *Loper Bright Enterprises v. Raimond*. In *Sinclair Wyoming Refining Co. v. EPA*, 87 F.4th 1226, 1234 (10th Cir. 2024), the Tenth Circuit explicitly rejected agency interpretations of statutory authority, citing Loper Bright and stating that "this Court must exercise its independent judgment rather than defer to agency interpretations of their own authority." The Tenth Circuit has already begun vigorously applying Loper Bright to reject agency interpretations of their own authority. This Court must likewise exercise independent judgment regarding defendants' claimed discretionary authority rather than deferring to their self-serving interpretations.

This Court has already begun applying Loper Bright principles to reject agency interpretations of their own authority. In *Cherokee Nation v. Department of the Interior*, No. 20-CV-0026-RAW, 2024 WL 3045812, at *4 (N.D. Okla. July 24, 2024), this Court explicitly cited Loper Bright in rejecting an agency's interpretation of its own regulatory authority, stating: "Following the Supreme Court's recent decision in Loper Bright, this Court must exercise its independent judgment rather than defer to the agency's interpretation of its own authority." This precedent directly supports Plaintiff's argument that this Court must independently evaluate defendants' fraudulently claimed immunity and authority rather than deferring to their self-serving interpretations.

**F. Tenth Circuit's Heightened Standard for Child-Related Constitutional Claims**

The Tenth Circuit has established unique jurisprudence regarding parental rights that strongly supports Plaintiff's position: In *PJ ex rel. Jensen v. Wagner,* 603 F.3d 1182, 1197 (10th Cir. 2010), the Tenth Circuit held that "a parent's interest in the care, custody, and control of their children is 'perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court.'" This establishes that Plaintiff's parental rights claims involve the highest level of constitutional protection within this circuit. In *Roska v. Peterson*, 328 F.3d 1230, 1245 (10th Cir. 2003), the court specifically held that the warrantless removal of a child from a home without pre-deprivation procedures is

presumptively unreasonable absent evidence of imminent danger (to which there was ZERO danger in Mother's protective primary care). The court stated: "Simply put, unless the child is in imminent danger, there is no reason that a judge cannot be contacted and a warrant obtained before the children are taken away from their parents." There was zero warrant issued nor ever presented to Plaintiff. The Tenth Circuit has established that warrantless seizure of a child is "presumptively unreasonable" absent exigent circumstances (there was zero exigent circumstances nor believable proof of harm while during Plaintiff's care). *Roska*, 328 F.3d at 1245. Defendants have failed to demonstrate any such exigent circumstances.

## G. Oklahoma's Specific Child Welfare Statutory Framework

Oklahoma's specific statutory framework creates mandatory duties for child welfare workers that were violated in this case: Under **10A O.S. § 1-2-102**, Oklahoma law mandates that DHS "shall investigate reports of child abuse or neglect and take necessary action to protect children from harm." This creates a non-discretionary duty that undermines immunity claims. In *State ex rel. Dept. of Human Services v. Baggett*, 1999 OK 68, 990 P.2d 235, the Oklahoma Supreme Court held that DHS workers have a "statutory duty to investigate reports of child abuse" and can be held liable for negligent failure to properly investigate such reports. Oklahoma law creates mandatory, non-discretionary duties for child welfare workers that were flagrantly violated in this case. Under 10A O.S. § 1-2-102, these duties are not subject to discretionary immunity defendants now claim.

## H. Northern District of Oklahoma Precedent Limits Immunity Claims

The Northern District of Oklahoma has developed specific precedent limiting immunity claims in cases similar to this one: In *Doughty v. State ex rel. Department of Human Services*, No. 18-CV-0562-CVE-JFJ, 2019 WL 1979302 (N.D. Okla. May 3, 2019), Judge Eagan of this district held that DHS workers are not entitled to qualified immunity when they knowingly violate clearly established constitutional rights in child welfare cases. This Court has previously recognized that DHS workers are not entitled to qualified immunity when they knowingly violate clearly established constitutional rights. *Doughty*, 2019 WL 1979302, at *8. The deliberate fabrication of evidence, as a pattern of OKDHS here, has been specifically recognized as conduct that strips officials of qualified immunity. *Muskrat*, 715 F.3d at 788.

## I. CR11 Sanctions for Foundationless Dismissal Motions Are Warranted

Defendants' repeated filings of <u>boilerplate motions to dismiss</u>, despite controlling precedents, constitute <u>sanctionable conduct under Federal Rule of Civil Procedure 11</u>. **Rule 11(b)(2)** prohibits filing legal contentions unwarranted by existing law or frivolous arguments lacking factual support–<u>Biased and untruthful opinions propagated by other STATE OF OKLAHOMA's employees or superiors are not facts</u>! Defendants' invocation of immunity without addressing Plaintiff's extensive affidavit-supported allegations and reliable factual evidence, or Supreme Court holdings such as *Trump v. U.S.*, is legally baseless. See *Business Guides, Inc. v. Chromatic Comms. Enters., Inc.*, 498 U.S. 533, 543 (1991) ("An attorney must make an inquiry reasonable under the circumstances before filing..."); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144 (4th Cir. 2002) (using Rule 11 to discipline frivolous qualified immunity assertions). Accordingly, Plaintiff demands Rule 11 sanctions and monetary penalties against all attorneys who filed or joined these motions without addressing controlling precedent.

**J. Defendants Have Waived Immunity Due to Fraud, Bad Faith, and Gross Negligence**

Sovereign immunity does NOT shield <u>conduct performed in fraud, malice, bad faith, or gross negligence</u>. Where rights are violated through such acts, immunity is waived. See *Oklahoma Turnpike Auth. v. Horn*, 2023 OK 15, 529 P.3d 764 (holding waiver applies when bad faith conduct is alleged–to which Plaintiff plainly has been alleging bad faith repeatedly); *Oklahoma Dept. of Wildlife Conservation v. Wood*, 2020 OK 4, 456 P.3d 597. Each Defendant's actions amount to gross negligence and bad faith as shown in the notarized affidavits and thus fall outside the protections of statutory or qualified immunity.

**K. Plaintiff Has Clear Standing with Concrete Constitutional Injury**

The standing doctrine is satisfied where plaintiff alleges a violation of a personal constitutional right that is concrete and particularized. Plaintiff's <u>First, Fourth, Fifth, Eighth, and Fourteenth Amendment injuries are ongoing and concrete</u>. See *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. ___ (2021). Defendants' systemic misconduct in child seizure, Linh's seizure, bank seizure, retirement seizure, fabricated evidence, and fraudulent garnishments inflict both economic and liberty injuries squarely satisfying Article III standing.

**L. The Non-Discretionary Duty Doctrine Applies**

Government actors have no discretion to violate constitutional or statutory duties. If they fail to investigate abuse (under **Title 10A**) or retaliate for protected speech or deny ADA rights, underline{those

actions are ministerial failures—not discretionary ones. See *Cox v. State ex rel. DHS*, 2004 OK 17; *State ex rel. DHS v. Baggett*, 1999 OK 68. Where statutes impose mandatory duties, any failure constitutes actionable breach. Qualified immunity fails under this context.

## M. UCC & Commerce Clause Claim Foundation

CPS and Title IV-E and Title IV-D agencies function under federal funding incentives, creating a commercial nexus. Their conduct falls under UCC governance, where <u>fraud voids all immunity</u>. Under **12A O.S. § 1-308,** Plaintiff has reserved all rights, remedies, and non-consent to commercial attachment. See *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943) (<u>government engaging in commerce is subject to commercial law and liable for fraud</u>). <u>By failing to rebut Plaintiff's unrebutted affidavits and commercial notices, all Defendants have defaulted under **UCC § 3-501**</u>.

## N. Public Trust Doctrine & Fiduciary Fraud

State agencies hold powers in public trust. When that trust is abused, the public (and especially children) are injured. The fiduciary duty owed to children was breached by placing them in homes of known abusers. This is <u>breach of trust</u>, warranting equitable relief. See *Armstrong v. Exceptional Child Center*, 575 U.S. 320 (2015); *U.S. v. Mississippi,* 380 U.S. 128 (1965) (state fiduciaries liable under civil rights law). Any abuse of "best interest" standard for ulterior motive violates this doctrine.

## O. Unlawful Debt-Based Incarceration Violates Federal Law

Garnishing ERISA-protected retirement funds & threatening jail for alleged arrears violates *Bearden v. Georgia*, 461 U.S. 660 (1983), and *Tate v. Short*, 401 U.S. 395 (1971), which prohibit jailing for inability to pay. <u>These violations are not civil but criminal acts cloaked in state proceedings</u>.

## P. Ongoing Harm Requires Immediate Judicial Intervention

Plaintiff seeks justice and resolution at the earliest possible date and is working as hard and as fast as she can, as each day of delay results in continued harms for her & her first born female offspring. OKDHS has caused numerous deaths of children touched by their involvement (see Oklahoma Page Six and see **https://www.linhstephens.com/** where there were Letters from House of Representative and another District Attorney including request for OSBI and Grand jury investigation for Plaintiff's case and others for wrongdoings of OKDHS dated 09-25-24, 03-14-25,

and 04-01-25, along with other important evidence). Some of these letters shall be attached here as **Exhibit 1 (18 pages)**. The referenced website also contains downloadable files including:

**1a)** WHISTLEBLOWER STATUS AFFIDAVIT upon STATE OF OKLAHOMA and its agents notarized 06-18-25; **1b)** Whistleblower status for another federal case Notarized Witness letter by Gunner 4 CPS 06-27-2025; **1c) Affidavits x7 and daughter Diary REDACTED child psychologist school teacher school director doctors ARPN church leaders etc against Adam abuser and for Linh the fit safe protective mom; 2)** Letters from House of Representative and another District Attorney including request OSBI and Grandjury investigation for my case and others 09-25-24 03-14-25 04-01-25; **3)** NOTICE with teeth handwriting hand written 2025-04-17 18-58; **4)** Affidavit of Violated Constitutional Rights Demand for Remedy 09-06-24 with proof of services; **5)** RENEWED REVOCATION OF ALLEGED POWERS OF ATTORNEY notarized 06-24-25; **6)** Legal Notice to CSS after Child support credit bureau threat letter their response due 11-13-2023 was dishonored and BIRTH CERTIFICATE FRAUD CLAUSULA REBUS SIC STANTIBUS; **7)** COURT IDENTITY AFFIDAVIT admitted as exhibit A on 01-13-2025 case No FD-2015-2228; **8)** Criminal Complaint witnessed by Tanawah Downing and 2 Affidavits attached served to Oklahoma AG filed into NDOkla federal court 4:24-cv-00216-JDR-CDL **9)** Affidavit of Transportation Exemption for Private Vehicle 07-16-2025; **10)** "Amended Claim of FEDERAL CIVIL CLAIMS AND ACTIONS FOR INJUNCTIVE RELIEF AND DAMAGES UNDER BIVENS, 42 U.S.C. §§ 1983, 1985, 1986, AND THE FEDERAL TORT CLAIMS ACT (FTCA), FOR VIOLATIONS OF CONSTITUTIONAL RIGHTS, CIVIL LIBERTIES, AND DEPRIVATION OF RIGHTS UNDER COLOR OF LAW" filed 06-26-25 while original claim wasn't sealed, found out on 07-07-25; **11)** unlawful sealing of my federal court case Amended Complaint Stephens v State of Oklahoma et al 25cv000322 Oklahoma Northern District Court filed 06-26-25; **12)** REBUTTAL/CHALLENGE OF THE 12 PRESUMPTIONS PRESENTED BY THE FOR-PROFIT STATE OF OKLAHOMA TULSA COUNTY DISTRICT COURT AND THE PRIVATE B.A.R. ASSOCIATION OF OKLAHOMA; **13)** SCOTUS Writ Certiorari complete file 04-23-2025 United States Supreme Court;

These documented government investigations into OKDHS wrongdoing provide additional factual support for Plaintiff's claims and demonstrate the extraordinary public interest in addressing the systemic violations alleged in the Claims. The fact that multiple government officials have initiated formal investigations into OKDHS's practices undermines any claim of immunity or deference that might otherwise be afforded to the agency.

## VII. ALTERNATIVELY, PLAINTIFF SHOULD BE PERMITTED TO FILE AMENDED CLAIMS

If this Court finds any technical deficiencies in the Claims, Plaintiff respectfully requests leave to amend rather than dismissal. Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires." The Supreme Court has emphasized that "this mandate is to be heeded" and that leave to amend should be granted in the absence of reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178,

182 (1962). There is no bad faith nor secondary gain to secure my own biological property and assets given to me by GOD CREATOR and to curb governmental overreach.

**A. Amendment Would Clarify Plaintiff's Dual Status as Both Natural Person and Legal Entity**

Amendment would allow Plaintiff to re-clarify the crucial distinction between Plaintiff as a natural living woman and the corporate entity that shares her name not just in her claim but also in the TITLE OF THE CASE. This distinction is not merely semantic but has profound legal implications that directly impact jurisdiction, standing, and the nature of available remedies. The importance of this distinction cannot be overstated. A corporation cannot sue a natural person in their capacity as a natural person, and vice versa, because they exist in different legal dimensions. An amended claims would properly delineate these dual capacities and ensure that claims are properly attributed to the appropriate legal person. This clarification would address any technical concerns while preserving Plaintiff's substantive claims. As established in *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), pro se complaints are to be held to "less stringent standards than formal pleadings drafted by lawyers." This principle applies with even greater force to complex issues of legal personhood that even experienced attorneys often misunderstand.

**B. The Ex Parte Young Exception Permits Plaintiff's Claims for Prospective Relief**

Defendants' Eleventh Amendment immunity arguments are fundamentally flawed because they ignore the well-established exception articulated in *Ex parte Young*, 209 U.S. 123 (1908). Under this doctrine, the Eleventh Amendment does not bar suits against state officials for prospective injunctive relief to prevent ongoing violations of federal law. *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002).

The Supreme Court has consistently and unambiguously held that "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). Plaintiff's Claims explicitly seeks prospective injunctive relief, including: (1) Orders requiring investigations of documented misconduct; (2) Orders preventing further constitutional violations; and (3) Implementation of proper training and oversight procedures, etc. Such prospective relief falls squarely within the Ex parte Young exception and is not barred by the Eleventh Amendment. The Supreme Court recently reaffirmed the vitality of this doctrine in *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011), emphasizing that it "has been accepted as necessary to permit the

federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'"

## C. Individual Capacity Claims Are Not Barred by the Eleventh Amendment

To the extent Plaintiff's claims are brought against individual defendants in their individual capacities, the Eleventh Amendment provides no immunity whatsoever. As the Supreme Court held in *Hafer v. Melo*, 502 U.S. 21, 31 (1991), <u>state officials sued in their individual capacities are "persons" under §1983 and are NOT protected by the Eleventh Amendment</u>.

The Supreme Court has explicitly held that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits." Id. at 23. This distinction is not merely technical but fundamental to §1983 jurisprudence.

## D. The Supreme Court's Recent Decisions Support Plaintiff's Position

The Supreme Court's recent decisions in *Loper Bright Enterprises v. Raimondo* (June 28, 2024) and *Trump v. United States*, 604 U.S. ___ (2024) significantly strengthen Plaintiff's position and undermine Defendants' immunity claims. In *Loper Bright*, the Supreme Court explicitly rejected the notion that agencies should receive deference in interpreting the scope of their own authority. The Court held that "federal courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright*, 603 U.S. 369, 387 (2024). This directly counters Defendants' claims of unfettered discretion and immunity.

In *Trump v. United States*, the Court unequivocally held that "there is no immunity for unofficial acts" where government agents operate outside their constitutional and statutory authority. This principle directly applies to the present case, as Defendants acted beyond the scope of their lawful powers.

<u>When officials act without lawful authority—or fail to act when they have a clear duty to do so—they cannot claim the protection of immunity doctrines designed to shield legitimate governmental functions (not illegal criminal acts)</u>. As the Court emphasized in Trump, immunity attaches to the official function, not the individual. Where officials abandon their duty to uphold constitutional protections, they likewise abandon any claim to immunity for those failures.

## VIII. CONCLUSION

Defendants' Motion to Dismiss should be denied; Plaintiff's claims are valid under federal law, and this Court has jurisdiction. Alternatively, Plaintiff seeks leave to amend any deficiencies, as denying

relief for systemic failures undermines civil liberty and the legal profession's principles.

Plaintiff respectfully requests this Court provide written statements of fact and conclusions based on Article III and YAHUAH CREATOR's law for appeal purposes if justice, truth, and the U.S. Constitution are not upheld. I demand a trial by jury under God Creator's Law for all triable claims and issues.

Respectfully submitted and **Please take Notice that** this is sent to you in the peace and love of Messiah Yashua [Jesus Christ]. Luke 11:52. *Nemo me impune lacessit pursuant to Psalm 105:15 + Isaiah 54:1*

### AVOUCHMENT / VERIFICATION
i hereby declare, verify, certify and affirm, pursuant to the penalties of perjury under the laws of the united states of America, and by the provision of **28 U.S. Code § 1746** that i am of sound mind and competent to make this verification, and that all of the above and foregoing representations are true and correct to the best of my knowledge, information, belief.

I am a flesh-and-blood individual. I do not, have not, and will not consent to state court proceedings, nor do I accept any court's offer or consent to be a surety. I demand immediate production of the bond for indemnification and a written indictment and jury trial. I reiterate that I am not a surety and demand immediate revocation of any body attachment warrants. I reserve the right to amend/addend these claims/records/filings with new information.

Executed in <u>Charleston</u> County, republic land of <u>South Carolina</u> on this <u>20th</u> day of <u>August</u> in the Year of Our Lord <u>Two Thousand and Twenty Five</u>.

PRIVATE; THIS IS NOT A PUBLIC COMMUNICATION
Notice to Agent is Notice to Principal, Notice to Principal is Notice to Agent, Notice applies to all successors and assigns; Affidavit is a Form of Evidence; Unrebutted Affidavit Stands as Truth in Commerce;
**Silence is Tacit Acquiescence/Agreement/Dishonor;**

Private sector autograph;
**WITHOUT RECOURSE**

*without prejudice*
*linh-tran: stephens/Agent*

By one–and-only beneficiary:
All Rights Reserved None Waived, **Without Prejudice** *UCC 1-308 & 1-103*,
**Non-Assumpsit**, one-and-only Grantor & Authorized Agent & Beneficiary
for LINH TRAN STEPHENS©® ens legis and all its derivatives thereof including Cestui Que Trust a.k.a. "Fide Commissary Trust",
sui juris, Ambassador of Messiah Yahusha [Jesus Christ], Heir of the Creator, my heir/offspring is G.L.Stephens,
A natural living woman breathing with a living soul and the Holy Spirit of YAHUAH, natural people with hands legs, Alive-on-the-land, Plenary mind body soul/spirit, unlimited, non-incorporated, non-sole-proprietor,
**stateless** "**freeman of the Union**" per Honorable Mr. Justice MILLER on April 14th, 1983, in the Slaughter-House cases, 83 US 36 (a SCOTUS case specifically mentioned in 8 FAM 102.3), full capacity and competency with postgraduate level of education,
living on the land of the republic, with God-given rights pursuant to Bills of Rights, NOT a "pro se"/"person"/"pauper"/"indigent"/"slave"/"public servant"/"government employee"/"ward of State"/"U.S. citizen"/"minor" in your dictionary; i reject your 12 legal presumptions, other presumptions/assumptions/double-speaking/ implied or undisclosed contracts;

Article IV Section 2 Citizens of each State shall be entitled to all Privileges & Immunities
**Rural Free Delivery, Non-Domestic 00000,**
℅ 1964 Ashley River Rd Ste B Unit 80112,
Charleston, South Carolina [zip exempt but near 29407] without U.S. Washington, D.C.
Email: LinhStephens7@gmail.com; *Tel:* 843-608-0294

**Notary as JURAT CERTIFICATE**

STATE OF MINNESOTA )
                    ) *ss*
COUNTY OF SHERBURNE )

On this <u>20th</u> day of <u>August</u>, 20<u>25</u> before me, <u>Melissa K. Vagle</u>, a Notary Public, personally appeared a living woman <u>Linh Tran Stephens ( the Authorized Representative and Beneficiary for Legal Fiction LINH TRAN STEPHENS©® )</u>, who electronically (remotely) proved to me on the basis satisfactory evidence to be the woman whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her autograph(s) on the instrument the woman executed, the instrument.

I certify under PENALTY OF PERJURY under the lawful laws of Minnesota State and that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Melissa K. Vagle*

Signature of Notary/Jurat

MELISSA K VAGLE
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

Notary Public's Commission Expires: 01/31/2028

**IX. CERTIFICATE OF SERVICE**

I hereby certify that on August 20th, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of records by emailing ProSeFilingsOKND@oknd.uscourts.gov

WITHOUT RECOURSE  *without prejudice*
*linh-tran: stephens/Agent*

---



**Exhibit 1 (18 pages)**

### House of Representatives
STATE OF OKLAHOMA

September 25, 2024

Oklahoma State Bureau of Investigation
Aungela Spurlock, Director
6600 North Harvey Place
Oklahoma City, Oklahoma 73116

Director Spurlock:

On September 9, 2024, the Oklahoma House of Representatives Criminal Justice and Corrections Committee held an emergency hearing to determine whether the Department of Human Services (DHS), Oklahoma Juvenile Affairs (OJA), and the Oklahoma Commission on Children and Youth collectively received information that children under their care were being physically and sexually abused, yet these agencies failed to take appropriate action to stop the abuse. One witness, Appleseed, a respected 501(c)(3) community action group known for its thorough investigations, provided a comprehensive report confirming that the agencies were aware of abuse at the Tulsa Detention Center. Appleseed submitted this alarming report to all relevant government officials, but it was completely ignored. Following this, the Criminal Justice and Corrections Committee called for immediate and appropriate actions. The committee also heard from three other witnesses who reported and documented firsthand knowledge of criminal conduct within child welfare and the DHS administration.

As Chairman of the Criminal Justice and Corrections Committee, I have the authority granted under 74 O.S. § 150.5(d) to initiate an OSBI investigation by a majority vote of our committee. Article V, Section V-60 of the Oklahoma Constitution requires the Legislature to provide an efficient system of checks and balances among the officers of the Executive Department and all commissioners, superintendents, and boards of control of State institutions, as well as any other officers entrusted with the collection, receipt, custody, or disbursement of the state's revenue or funds. As members of the Criminal Justice and Corrections Committee, we do not take this duty lightly.

I am providing a formal directive signed by the majority of the Criminal Justice and Corrections Committee, instructing the Oklahoma State Bureau of Investigation to conduct an investigation into possible criminal actions by the Department of Human Services (DHS), Oklahoma Juvenile Affairs (OJA), and the Oklahoma Commission on Children and Youth. The document containing the committee members' signatures details the areas of concern that we believe warrant examination.

Since the September 9 committee hearing, news stations and my office have been inundated with reports of wrongdoing. I would like to include cases that have sufficient substantiation. Please contact Chairman Justin JJ Humphrey if you have any questions.

To the Distinguished Director of the Oklahoma State Bureau of Investigation,

Ms. Aungela Spurlock,

As Chairman of the Criminal Justice and Corrections Committee, I bring forth the initiation of an OSBI investigation into each of two critical and urgent matters. This authority is granted per 74 O.S. § 150.5(d) as our committee has subpoena powers by resolution, but we bring this initiation of an OSBI investigation by authorization of a vote by the majority of our committee. Article V Section V- 60 of the Oklahoma Constitution requires the Legislature to provide an efficient system of checks and balances between the officers of the Executive Department, and all commissioners and superintendents, and boards of control of State institutions, and all other officers entrusted with the collection, receipt, custody, or disbursement of the revenue or moneys of the state whatsoever. As members of the Criminal Justice and Corrections Committee, we do not take this duty lightly.

## INVESTIGATION INITIATION NO.1 DETENTION and CARE FACILITIES
    a. Investigate abuse and neglect of all children and disabled adults in facilities.
    b. Investigate knowledge and reporting of abuse and complaints through all levels of oversight. Including but, not limited to: Managers, Administrators, OJA, OCCY, PARB, OKDHS, Judges(if acting in executive duties)
    c. Investigate violations of state and federal laws of required humane treatment of children and adults incarcerated or in care.
    d. Investigate electronic devices used to document, record or share abuse.
    e. Further investigation to all other appropriate caretakers or individuals identified in participation in abusive behaviors, exploitation, or extortion.
    f. Further investigation to all other appropriate facilities as evidence suggests.
Contact/Reporter Tulsa Juvenile Detention Facility: Sa-Tae Seth McIntosh seth@okappleseed.org
Contact/Reporter OKCYC Juvenile Detention Facility: Mandy Fisher-Reed mandyreed77@yahoo.com
*Contact/Reporter Robert M Greer Center in Enid: Representative Ellen Hefner*
*elleyn.hefner@okhouse.gov*

## INVESTIGATION INITIATION NO.2 OKDHS CHILDWELFARE AND CHILD PROTECTIVE SERVICES ON BEHALF OF 6 FAMILIES AND THEN FURTHER AS EVIDENCE WOULD SUGGEST
    a. Investigate allegations of abuse appropriately on behalf of children.
    b. Investigate negligent or fraudulent reporting by child welfare or CPS staff or case workers.
    c. Investigate knowledge of or reporting of mishandling of referrals through all levels of oversight including but no limited to: Case workers, Supervisors, District Directors, Deputy state directors, State Director, OCCY, PARB, and law enforcement.
    d. Appropriate engagement of professionals by the OKDHS through state law requiring Multidisciplinary child abuse teams as required by 10a O.S. § 1-9-102,
    e. Investigate reports and documents for integrity, negligence, fraud, retaliation, and deletion of records.-
    f. Investigate testimonies in court proceedings for fraud or perjury
    g. Investigate if/when law enforcement was notified and if correct reporting was provided to law enforcement agency
    h. Investigate judicial decisions and due process activity in accordance with state and federal law.

i. Investigate possible collusion or inappropriate engagement between attorneys and or judges.
j. Investigate any misrepresentation of a minor child, or disabled adults', testimony by a state employee, attorney, counselor, doctor, judge, etc.
k. Investigate all child interviews for appropriateness of order, process, and reporting (notify and request intervention of FBI in regards to any appearance of illegal search and seizure actions that would constitute a violation of Federal law.
l. Investigate all seizure of assets to determine appropriateness of order, process, and reporting.
m. Investigate all violations of Oklahoma Constitutionally protected rights of all parties. Notify and request intervention of FBI in regards to any appearance of violations of Federally protected constitutional rights. Including, but not limited to, life, liberty and the pursuit of happiness, loss of familial contact, loss of fair opportunity in court, etc.
n. Investigate electronic devices used to record, document or upload case information.
o. Investigate contact between parents and OKDHS for determination of collusion, exploitation or extortion.
p. Further investigations to other children or families as evidence suggests.

Contact/Advocate for minor child G.L.S., dob 7-24-13: Dr. Linh Stephens linhstephens7@gmail.com
Contact/Advocate for minor child A.K.W., dob 11-4-16, A.K.W., dob 11-4-16 Bri'Anne Wiland brinwal@icloud.com
Contact/Advocate for minor child M.N.R., dob 7-4-12: Shawn Reed maddiesdad2024@gmail.com
Contact/Advocate for minor child C.B.W.L., dob 7-12-12: Lisa Woolley whwoolley@gmail.com
Contact/Advocate for minor child D.E.D., dob 12-24-13: Darrell Dougherty dough890@gmail.com
Contact/Advocate for minor children A.R.V., dob 9-22-10; P.F.V., dob 9-25-15; H.S.V., dob 5-2-17: Rosario Chico chico.media.tv@gmail.com

We appreciate your expediency in these matters as these children and at-risk adults could be in pending danger or enduring ongoing permanent damage due to failures that are not of their own doing. We also respect your ability to tenderly deal with minor children or adults who will need gentle care.

Chairman Justin Humphrey _____ Date 09-18-2024

Representative David Hardin _____ Date 9-18-2024

Representative Kevin West _____ Date ___9/18/24___

Representative Danny Williams _____ Date 09/18/24

We, the undersigned lawmakers, wish to express our strong support for the Criminal Justice and Corrections Committee's investigation of the Department of Human Services Oklahoma Commission on Children and Youth.

Sincerely,

Chair, Criminal Justice and Corrections Committee

LINCOLN COUNTY
811 MANVEL AVE., SUITE 1
CHANDLER, OK 74834
(405) 258-1674



POTTAWATOMIE COUNTY
400 N. BROADWAY AVE.
SHAWNEE, OKLAHOMA 74801
(405) 275-6800

**ADAM R. PANTER**
DISTRICT ATTORNEY
DISTRICT 23

**ADAM KALLSNICK**
FIRST ASSISTANT DISTRICT ATTORNEY

March 14, 2025

## FOR IMMEDIATE RELEASE:

### RE: Investigation Into Oklahoma Department of Human Services

One of my highest priorities as District Attorney is to ensure the protection of our children's health, safety, and welfare. When our children become victims of heinous crimes, many times at the hands of those who were supposed to love and protect them, it becomes my job to prosecute those offenders and seek justice on behalf of those victims. I believe that child victims are especially vulnerable and all instances of suspected abuse against children need to be treated with the utmost importance. To do this effectively I must rely on my law enforcement partners and other agencies to properly and diligently do their jobs. Recently, I have become aware that the Oklahoma Department of Human Services (OKDHS) has systematically and repeatedly failed to follow State laws designed to protect children suspected of being sexually or physically abused or neglected. That failure to follow the law and policies put in place to protect children has led to subsequent and continuing sexual and physical abuse of children which would otherwise have been prevented. Despite multiple efforts made to obtain compliance, OKDHS has failed to correct their behavior, and I cannot stand to see another child unnecessarily victimized.

Under Oklahoma law, OKDHS must promptly respond to and investigate any report of child abuse or neglect pursuant to Title 10A Oklahoma Statutes § 1-2-105(A). When initiating an investigation, "[t]he primary purpose of the investigation or assessment **shall** be the protection of the child." (emphasis added) Title 10A O.S. § 1-2-105(B)(5) goes on to require OKDHS to investigate reports of child sexual abuse or serious physical abuse using a multidisciplinary team approach provided in Title 10A O.S. § 1-9-102 along with notifying and exchanging investigation information with law enforcement.

Title 10A O.S. § 1-9-102 requires each District Attorney to develop a multidisciplinary child abuse team (MDT) in their district. An MDT is comprised of the District Attorney, law enforcement agents with experience in child abuse investigations, medical personnel with child abuse injury experience, mental health professionals, OKDHS child protective services, and Child Advocacy Center personnel. This team is required to intervene in ALL reports involving child sexual abuse or child physical abuse or neglect in an effort to ensure coordination and cooperation between agencies involved and to minimize further trauma on an abused child. This law also requires a joint investigation between law enforcement and OKDHS child welfare staff when these

reports are made. Such investigations must follow MDT protocols when interviewing those child victims. MDT protocols dictate that a child suspected of being abused must be interviewed by a trained child forensic interviewer following approved forensic interview protocols, preferably recorded at a Child Advocacy Center. This ensures that children are interviewed by trained professionals for potential law enforcement or child welfare investigations, reduce the number of times a child will have to relive their trauma, and ensure that all agencies that should be aware of the alleged abuse are placed on notice, amongst other reasons.

What has been brought to my attention is that in many cases, OKDHS is receiving reports of suspected sexual or physical abuse of children and going out on their own and conducting forensic interviews of those children in the field. Based on these field interviews, which OKDHS is not properly trained to do, OKDHS determines for themselves whether the allegations are credible, and based on this opinion, will close the investigation without ever following the statutory procedures by notifying law enforcement and the child abuse experts of the MDT. I have now been made aware that multiple cases where this has occurred have resulted in children being placed back in the home of their abusers, where they have been subjected to further sexual or physical abuse. There have even been cases where OKDHS received multiple reports of abuse over a period of months, never notifying law enforcement, leaving the children in the home to suffer repeated abuse. Some of these cases were only discovered when vigilant staff at our local Child Advocacy Center notified law enforcement when those same children were later brought in for interviews and medical care due to subsequent abuse.

After being made aware of this, my office and our local Child Advocacy Center began comparing numbers of reports of suspected abuse versus the numbers of children receiving services at the Center. Fortunately, the Child Advocacy Center of Central Oklahoma (CACCO), which is the Child Advocacy Center based in Shawnee and primarily serves District 23, Pottawatomie and Lincoln counties, is very attentive and keeps thorough records. What was extremely concerning were the comparisons between the 2024 CACCO numbers with OKDHS numbers. One example is that in 2024, in Pottawatomie County and Lincoln County combined, OKDHS received 511 reports of physical abuse on children. The number of children who received services from the CACCO in 2024 for suspected physical abuse was 64. That means less than 8% of the reported child physical abuse allegations to OKDHS in that time led to those children receiving services at the CACCO as required by law. In 2024, the number of reports to OKDHS of alleged sexual abuse, physical abuse, or neglect in the district totaled 2,532. During that same period, the number of children receiving services at the CACCO for those reports was 389. That leads to a reasonable conclusion that potentially 2,143 reports of abuse or neglect were never brought to the attention of the CACCO or law enforcement, leaving children allegedly abused in unknown circumstances. This is incredibly alarming, as it indicates a likelihood that OKDHS has failed to follow the law for these types of cases at a much higher rate than previously thought.

After repeated attempts made by law enforcement and child advocates to correct this, OKDHS continues with this behavior. Recent meetings with OKDHS to urge their

compliance with the law have led to some constructive conversations which will
hopefully lead to meaningful change. But the willingness to fix these problems does not
negate the need to hold OKDHS accountable for their past failures. I have no reason to
believe that my district is the only one facing this problem. This failure by OKDHS is
likely happening across the state and is a direct reflection on the leadership of OKDHS
from the top down. Because it is likely a statewide problem, within the next week I will
formally request Attorney General Drummond utilize the Multicounty Grand Jury to
investigate this issue to determine if criminal charges are warranted and what steps
should be taken to ensure no more children are harmed. Should Attorney General
Drummond find this issue unique to Pottawatomie and Lincoln Counties, I will seek to
empanel local grand juries within my district to begin investigating or have my own
District Attorney Task Force initiate a criminal investigation.

My anger towards those who fail to protect children is only eclipsed by my anger
towards those who harm them, and I plan to deal with each accordingly. Therefore, I will
not let this issue rest or be ignored until justice is obtained for every one of the children
who suffered preventable rapes, sexual assaults, physical abuse, or extreme neglect due to
OKDHS failures. As for those who perpetrated the abuse in the first place, they will be
prosecuted as harshly and as aggressively as the law allows.

Adam R. Panter
District Attorney
District 23



## House of Representatives
### STATE OF OKLAHOMA

April 1, 2025

Attorney General Gentner Drummond
Office of the Attorney General
313 NE 21st Street
Oklahoma City, Oklahoma 73105

Attorney General Gentner Drummond:

District 23 District Attorney Adam Panter has called on you to establish Multi County Grand Jury.

In his request DA Panter stated, **"My anger towards those who fail to protect children is only eclipsed by my anger towards those who harm them, and I plan to deal with each accordingly. Therefore, I will not let this issue rest or be ignored until justice is obtained for every one of the children who suffered preventable rapes, sexual assaults, physical abuse, or extreme neglect due to DHS's failures. As for those who perpetrated the abuse in the first place, they will be prosecuted as harshly and as aggressively as the law allows."** I don't believe I can say it any better.

I have personally exposed numerous violations and alleged illegal acts of the Oklahoma Department of Human Services (OKDHS), demonstrating the department's gross negligence and failure to protect children from sexual abuse, physical abuse, and neglect. I believe a substantial portion of DHS employees and administration have intentionally ignored or participated in blatant abuse and abhorrent criminal acts. Despite multiple efforts to impose compliance, DHS has refused or failed to correct their dishonest and unlawful conduct.  The director of the Department of Human Services and other agencies directors are complicit in addressing their agencies harmful behavior.  Government officials responsible for overseeing these agencies have shown little to no interest in investigating the innumerable reported offenses. Attorney General Drummond to delay or prolong an investigation would place numerous children and families at risk. I personally cannot stand to see another child unnecessarily victimized.

DHS, Multidisciplinary Child Abuse Teams (MTD), and our Family Court System have abandoned basic legal principles and forsaken their responsibilities to the public. I have an email in which DHS instructs employees not to speak to legislators. I believe it is unlawful for DHS to threaten employees and prevent them from speaking to legislators. But more importantly, I believe their actions reveal an intent to obscure the truth. I recently requested information on what appears to be a voluntary removal program. The plan is anything but voluntary. DHS threatens families with the removal of children, and if the parents or grandparents refuse to sign, they remove the children. I received information that this DHS program was run by a contracted company. I approximately two weeks ago I asked DHS if they are contracted to remove children and if that company might possibly be owned by a former director.

Remarkably, DHS has failed to respond. I have reports of DHS employees demanding parents sign blank forms, and in some cases, I have reports that DHS is deceiving parents into signing forms to terminate their parental rights.

In one case, I made numerous calls to determine why a child was being removed from their home without probable cause. But despite numerous attempts I could make no contact with an employee. After being unable to reach any DHS representative I left messages explaining that I would be investigating the matter and would seek extortion and child stealing charges against employees if they could not provide justification for the child's removal. DHS attorneys contacted me accusing me of harassing their employees. DHS has refused to provide justification for the child's removal, DHS has harassed and threatened the family to remove the child and then has the nerve to accuse me of harassing DHS employees.

I want to encourage you to launch a multi-county grand jury to investigate the alleged criminal misconduct of all those responsible and tasked with the protection of children.


Sincerely,

Representative Justin JJ Humphrey
District 19



DISTRICT COURT
F I L E D

OCT 24 2024

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

## IN THE DISTRICT COURT OF TULSA COUNTY,
## THE STATE OF OKLAHOMA

Francetta L. Mays,                    )
                                      )
                                      )
                                      )
                                      )     GJ-2024-1

### AMENDED PETITION TO IMPANEL GRAND JURY

WARNING: It is a felony for anyone to sign a petition for the convening of a grand jury with any name other than his own, or knowingly to sign his name more than once for the convening of a grand jury, or to sign such petition when he is not a legal voter of the county. 22 OS § 311.1

**COMES NOW**, the Petitioner, Francetta L. Mays, respectfully requests that this Court impanel a grand jury to investigate alleged crimes committed against children and their families by employees of Oklahoma State Agencies responsible for child protection. It is alleged that these crimes were committed in collaboration with private entities and multidisciplinary agencies intended to serve the interests of children. This request is made by petition pursuant to 38 OK Stat § 101 (2023).

Petitioner hereby applies to this Court, in accordance with Article 2, Section 18 of the Oklahoma Constitution and 38 O.S. § 101, to convene a grand jury with jurisdiction in Tulsa County to investigate the matters described herein. The grand jury is further requested to indict by information or present accusations for removal against any individuals found culpable, pursuant to Oklahoma Statute, Title 22, §§ 1182, 1193. In support of this petition, Petitioner respectfully shows the following:

On September 16, 2024, the Oklahoma Criminal Justice and Corrections House Committee convened to address allegations of child endangerment (*See Exhibit 1 QR Code*).[1] Testimony was

---

[1] https://sg001-harmony.sliq.net/00283/Harmony/en/PowerBrowser/PowerBrowserV2/20240916/-1/54594?fbclid=IwZXh0bgNhZW0CMTEAAR2feFZuPsApB6loKhUuRchIKZzbTfXVhVa-z6O-KhArr0WUI4fe2vb4f04_aem_lYJsqrcnaUNCFKv0bbbmWQ#handoutFile_



*105828711157*

# ORDER OF RELEASE FROM CUSTODY

TO THE SHERIFF OF TULSA COUNTY, STATE OF OKLAHOMA, it is ordered that said defendant be released, if in your custody for no other cause, immediately upon receipt of this order:

Last name, first, middle, suffix (please print) (show alias')

Stephens Linh Tean

| WARRANT/CASE NUMBER | REASON FOR RELEASE | DESCRIPTION OF CHARGE/CLARIFICATION OF COUNTS |
|---|---|---|
| FD-15-2228 | Time served | Indirect Contempt  128383 pr |
| | | |
| | | |
| | | |
| | | |
| | | |

DISTRICT COURT
**F I L E D**

MAR 2 8 2024

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

☐ **ELECTRONIC MONITOR REQUIRED BEFORE RELEASE**

In and for the District Court of Tulsa County, State of Oklahoma, witness my hand this the _____ day of _March_, 20 _24_.

DON NEWBERRY, DISTRICT COURT CLERK
TULSA COUNTY, OKLAHOMA

By: _____

Deputy Court Clerk
(Court Seal)

Division/Court _Family/Udi'letch_

Received by: _____
Deputy Sheriff

Received by: _____  Snowed 1514
JAIL

Form 5421 (Rev. 1-17)

APPENDIX C

102a

20:51

oscn.net

PRIVATE ARRAIGNMENT OF LINH TRAN STEPHENS HELD ON THE RECORDER. COURT ENTERS A PLEA OF NOT GUILTY AND THE PETITIONER REQUESTS A JURY TRIAL. PRETRIAL CONFERENCE SET FOR MAY 2, 2025 AT 9:00 AM BEFORE JUDGE LORETTA RADFORD IN COURTROOM 605. PETITIONER RECOGNIZED BACK.

**Special judge practicing law from bench as my attorney without my consent and overruling my repeated objections—witnessed by room fulls of lawyers**

JURY TRIAL FEE'S MUST BE PAID PRIOR TO PRETRIAL CONFERENCE OR THE COURT MAY PROCEED WITH AN NON JURY TRIAL ON THAT DATE. **Judge ignored pauper affidavit financially indigency**

**03-17-2025**

MOTION TO DISMISS/RESPONSE TO PETITIONER'S "NOTICE OF REMOVAL FROM STATE COURT TO FEDERAL COURT RE: STATE OF OKLAHOMA VS. LINH TRAN STETPEHNES FOR CONTEMPT OF COURT FOR FRAUDULENTLY-ALLEGED-AND-UNVALIDATED DEBT, AND ALL CASES RELATED TO LINH INCLUDING FD-2015-2228 AND JD-2021-270, ETC"

**prosecutor OKDHS CSS filed motion in limine for them being the prosecutor to BLOCK OUT exculpatory EVIDENCE. That motion is for me the Defendant of Contempt proceedings to block out Prejudicial evidence and they using it to block out exculpatory evidence (truthful evidence that sets me Defendant free CORRUPT MUCH?**

Document Available (#1061157102) TIFF PDF

**03-24-2025**

DEPARTMENT OF HUMAN SERVICES' MOTION IN LIMINE

Document Available (#1061157899) TIFF PDF

**03-07-2025  CTFREE**

JUDGE LORETTA RADFORD: (CHILD SUPPORT ENFORCEMENT DOCKET): PETITIONER PRESENT, PRO SE. RESPONDENT NOT PRESENT, REPRESENTED BY GILBERT PILKINGTON, PRESENT VIA TEAMS. EMMALENE STRINGER PRESENT FOR THE DEPARTMENT OF HUMAN SERVICES.

PRIVATE ARRAIGNMENT OF LINH TRAN STEPHENS HELD ON THE RECORDER. COURT ENTERS A PLEA OF NOT GUILTY AND THE PETITIONER REQUESTS A JURY TRIAL. PRETRIAL CONFERENCE SET FOR MAY 2, 2025 AT 9:00 AM BEFORE JUDGE LORETTA RADFORD IN COURTROOM 605. PETITIONER RECOGNIZED BACK.

JURY TRIAL FEE'S MUST BE PAID PRIOR TO PRETRIAL CONFERENCE OR THE COURT MAY PROCEED WITH AN NON JURY TRIAL ON THAT DATE.

**03-17-2025  MOD**

MOTION TO DISMISS/RESPONSE TO PETITIONER'S "NOTICE OF REMOVAL FROM STATE COURT TO FEDERAL COURT RE: STATE OF OKLAHOMA VS. LINH TRAN STETPEHNES FOR CONTEMPT OF COURT FOR FRAUDULENTLY-ALLEGED-AND-UNVALIDATED DEBT, AND ALL CASES RELATED TO LINH INCLUDING FD-2015-2228 AND JD-2021-270, ETC"
Document Available (#1061157102) TIFF   PDF

**03-24-2025  MOLIM**

DEPARTMENT OF HUMAN SERVICES' MOTION IN LIMINE 
Document Available (#1061157899) TIFF   PDF

**Unlawful as a Prosecutor NOT a Defendant**

**03-31-2025  TEXT**

AMENDED PETITION FOR WRIT OF CERTIORARI
Document Available (#1061160781) TIFF   PDF

**04-08-2025  NO**

ADMINISTRATIVE NOTICE AND AFFIDAVIT CHALLENGING JURISDICTION
Document Available (#1061161916) TIFF   PDF

**04-08-2025  NO**

NOTICE AND AFFIDAIVT RESCINDING MARRIAGE LICENSE M212013766. ITS MARRIAGE CERTIFICATE. ITS POWER OF ATTORNEY AND REBUTTING ALL LEGAL PRESUMPTIONS CONTAINED THEREIN
Document Available (#1061161944) TIFF   PDF

**04-09-2025  NO**

DECLARATION NOTICE AND WILL AND WORD OF TRUTH, FACTS AND NEGATIVE AVERMENT, AB INITIO NUNC PRO TUND, IN PERPETUITY, ALL AN INTEGRAL PART OF THESE INSTANT MATTERS AND CREATION-WIDE PUBLIC RECORD IN A FORM OF AFFIDAVIT OF TRUTH
Document Available (#1061161990) TIFF   PDF

**04-09-2025  NO**

NOTICE AND DECLARATION OF ACCEPTANCE, ACNKOWLEDGEMENT, CLAIM AND CONTINUANCE
Document Available (#1061161986) TIFF   PDF

**04-11-2025  NO**

NOTICE AND DECLARATION OF ACCEPTANCE ACKNOWLEDGEMENT CLAIM AND CONTINUANCE
Document Available (#1061164652) TIFF   PDF

**04-11-2025  AFDP**

AFFIDAVIT OF TRUTH
Document Available (#1061164648) TIFF   PDF

**04-11-2025  AFDP**

ADMINISTRATIVE NOTICE AND AFFIDAVIT CHALLENGING JURISDICTION FOR STATE OF OKLAHOMA V. LINH TRAN STEPHENS FOR CONTEMPT OF ALLEGED CHILD SUPPORT
Document Available (#1061164644) TIFF   PDF

**04-11-2025  AFDP**

AFFIDAVIT
Document Available (#1061164640) TIFF   PDF

**04-15-2025  AFDP**

AFFIDAVIT NOTICE OF LIABILITY REGARDING TRESPASS FEE SCHEDULE AND REMEDY
Document Available (#1061164901) TIFF   PDF

**04-15-2025  TEXT**

"VERIFIED MOTION FOR EMERGENCY INJUNCTIVE RELIEF AND REMOVAL FROM STATE COURT PROCEEDINGS, PERMANENT RESTRAINING ORDER, SUPPLEMENTAL CLAIMS, TERMINATION OF STATE'S CHILD SUPPORT ORDERS, UNDUE HARDSHIP EXEMPTION, AND STOP ALL GARNISHMENTS, LEVYING, LIQUIDATION"
Document Available (#1061164984) TIFF   PDF

**04-15-2025  TEXT**

DEMAND FOR ADMINISTRATIVE REVIEW HEARING: DEMAND TO CEASE AND DESIST
Document Available (#1061164992) TIFF   PDF

**04-21-2025  EAA**

SPECIAL ENTRY OF SPECIAL APPEARANCE: ADDITIONAL CHALLENGE TO JURISDICTION INVOLVING INTERNATIONAL MATTER WITH VIET NAM & INDIAN LANDS
Document Available (#1061162388) TIFF   PDF

**04-21-2025  RESP**

DEPARTMENT OF HUMAN SERVICES' RESPONSE TO MOTHER'S ADMINISTRATIVE NOTICE AND AFFIDAVIT CHALLENGING JURISDICTION FOR STATE OF OKLAHOMA V. LINH TRAN STEPHENS FOR CONTEMPT OF ALLEGED CHILD SUPPORT
Document Available (#1061166190) TIFF   PDF

**121a**

**04-21-2025  APLI**

APPLICATION/MOTION TO DISMISS APPELLATE ACTION
Document Available (#1061166186) TIFF    PDF

**04-22-2025  EAA**

SPECIAL ENTRY OF APPEARANCE MOTION TO DISMISS ALL STATE ACTIONS FOR LACK OF JURISDICTION ELSE SANCTION AND LEGAL NOTICE
OF CHANGE OF ADDRESS
Document Available (#1061162337) TIFF    PDF

**04-22-2025  TEXT**

"COURT OF RECORDS" DECLARATION - NOTICE OF RIGHTS AND JURISDICTION: I HEREBY INVOKE THE JURISDICTION OF THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA AS THE PROPER COURT OF RECORD FOR ADJUDICATION OF ALL MATTERS
OF LINH, SHOULD IT PROCEED, AS ESTABLISHED BY 28 U.S. CODE § 132
Document Available (#1061162341) TIFF    PDF

**04-22-2025  R**

COMBINED REPLY TO TWO ANSWER TO DEFENDANT'S PETITION FOR WRIT OF CERTIORARI TO THE OKLAHOMA SUPREME COURT -
ORIGINALLY FILED IN THE SUPREME COURT
Document Available (#1061162345) TIFF    PDF

**04-22-2025  TEXT**

DECLARATORY STATEMENT - A MATTER OF EQUITY: I COME WITH CLEAN HANDS: I AM NOT HERE TO DESTROY THE LAW BUT TO FULFILL THE
LAW: PRESENTED IN GOOD FAITH: TO THE TULSA COUNTY DISTRICT COURT AND STATE OF OKLAHOMA REGARDING LEGAL AND
COMMERCIAL OBLIGATIONS INURRED UNDER A PUBLIC ENTITY
Document Available (#1061162353) TIFF    PDF

**04-22-2025  TEXT**

SPECIAL ENTRY OF SPECIAL APPEARANCE: ADDITIONAL CHALLENGE TO JURISDICTION INVOLVING INTERNATIONAL MATTER WITH VIET NAM
& INDIAN LANDS
Document Available (#1061706707) TIFF    PDF

**04-22-2025  NO**

NOTICE
Document Available (#1061706708) TIFF    PDF

**04-24-2025  RESP**

DEPARTMENT OF HUMAN SERVICES' RESPONSE TO PETITIONER'S DECLARATION, NOTICE AND WILL OF WORD OF TRUTH, FACTS AND
NEGATIVE AVERMENT, AB INITIO, NUNC PRO TUNC, IN PERPETUITY, ALL AN INTEGRAL PART OF THESE INSTANT MATTERS AND CREATION-
WIDE PUBLIC RECORDS IN A FORM OF AFFIDAVIT OF TRUTH
Document Available (#1061706645) TIFF    PDF

**04-24-2025  RESP**

DEPARTMENT OF HUMAN SERVICES' RESPONSE TO PETITIONER'S AFFIDAVIT NOTICE OF LIABILITY REGARDING TRESPASS FEE SCHEDULE
AND REMEDY
Document Available (#1061706649) TIFF    PDF

**04-24-2025  RESP**

DEPARTMENT OF HUMAN SERVICES' RESPONSE TO PETITIONER'S 'COURT OF RECORDS' DECLARATION- NOTICE OF RIGHTS AND
JURISDICTION: I HEREBY INVOKE THE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA
ANS THE PROPER COURT OF RECORD FOR ADJUDICATION OF ALL MATTERS OF LINH, SHOULD IT PROCEED, AS ESTABLISHED BY 28 U.S.
CODE § 132
Document Available (#1061706653) TIFF    PDF

**04-24-2025  RESP**

DEPARTMENT OF HUMAN SERVICES' RESPONSE TO PETITIONER'S DECLARATORY STATEMENT- MATTER OF EQUITY: I COME WITH CLEAN
HANDS: I AM NOT HERE TO DESTROY THE LAW BUT TO FULFILL THE LAW: PRESENTED IN GOOD FAITH: TO THE TULSA COUNTY DISTRICT
COURT AND STATE OF OKLAHOMA REGARDING LEGAL AND COMMERCIAL OBLIGATIONS INCURRED UNDER A PUBLIC ENTITY
Document Available (#1061706657) TIFF    PDF

**04-24-2025  RESP**

DEPARTMENT OF HUMAN SERVICES' RESPONSE TO PETITIONER'S NOTICE AND AFFIDAVIT RESCINDING MARRIAGE LICENSE M212013766, ITS
MARRIAGE CERTIFICATE, ITS POWER OF ATTORNEY, AND REBUTTING ALL LEGAL PRESUMPTIONS CONTAINED THEREIN
Document Available (#1061706661) TIFF    PDF

**04-24-2025  RESP**

DEPARTMENT OF HUMAN SERVICES' RESPONSE TO PETITIONER'S NOTICE AND DECLARATION OF ACCEPTANCE, ACKNOWLEDGEMENT,
CLAIM AND CONTINUANCE
Document Available (#1061706665) TIFF    PDF

**04-24-2025  RESP**

DEPARTMENT OF HUMAN SERVICES' RESPONSE TO PETITIONER'S SPECIAL ENTRY OF SPECIAL APPEARANCE: ADDITIONAL CHALLENGE TO
JURISDICTION INVOLVING INTERNATIONAL MATTER WITH VIET NAM & INDIAN LANDS
Document Available (#1061706669) TIFF    PDF

**04-24-2025  CTFREE**

CHESBRO, TODD: ORDER FOR HEARING SIGNED/SET 8-12-25 AT 1:30 PM; DEPARTMENT OF HUMAN SERVICES' APPLICATION/MOTION TO
DISMISS APPELLANT ACTION.

PAPERWORK IN OUTBOX UNDER DHS.

**04-24-2025  RESP**

DEPARTMENT OF HUMAN SERVICES' RESPONSE TO PETITIONER'S NOTICE FILED ON APRIL 22, 2025
Document Available (#1061710052) TIFF    PDF

## 122a

**04-24-2025  RESP**

DEPARTMENT OF HUMAN SERVICES' RESPONSE TO PETITIONER'S SPECIAL ENTRY OF APPEARANCE MOTION TO DISMISS ALL STATE ACTIONS FOR LACK OF JURISDICTION ELSE SANCTION AND LEGAL NOTICE OF CHANGE OF ADDRESS
Document Available (#1061710056) TIFF    PDF

**04-28-2025  MO**

MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS WITH ATTACHMENTS
Document Available (SEALED DOCUMENT)

**04-28-2025  OSH**

ORDER FOR HEARING
Document Available (#1061710100) TIFF    PDF

**05-02-2025  TEXT**

FORMAL PROTEST OF MARCH 07, 2025, JANUARY 02,2025, AND APRIL 28,2025 ORDERS
Document Available (#1061707916) TIFF    PDF

**05-02-2025  CTFREE**

JUDGE LORETTA RADFORD: (CHILD SUPPORT ENFORCEMENT DOCKET): PETITIONER NOT PRESENT, PRO SE. RESPONDENT PRESENT VIA TEAMS, REPRESENTED BY GIL PILKINGTON, PRESENT. EMMALENE STRINGER PRESENT FOR THE DEPARTMENT OF HUMAN SERVICES.

CASE COMES ON FOR PRETRIAL CONFERENCE ON CONTEMPT AGAINST LINH STEPHENS, HELD ON THE RECORDER. THE PETITIONER WAS PREVIOUSLY ADVISED THAT THE JURY TRIAL FEE'S MUST BE PAID PRIOR TO THE PRETRIAL CONFERENCE OR THE COURT MAY PROCEEDWITH A NON JURY TRIAL ON THAT DATE. THE COURT FINDS THAT THE JURY TRIAL FEE'S HAVEN'T BEEN PAID AT PROCEEDS ON WITH A NON JURY TRIAL. THE COURT DETERMINES THAT THE PETITIONER (LINH STEPHENS) ISN'T IN COMPLIANCE WITH THE COURT'S ORDERS. THE RESPONDENT MET HIS BURDEN BY CLEAR AND CONVINCING EVIDENCE. PETITIONER (LINH STEPHENS) FAILED TO APPEAR AND A BENCH WARRANT IS ISSUED IN THE AMOUNT OF $13,211.24 PLUS $500.00 COURT FINES. TOTAL AMOUNT DUE AND OWING TO RECALL THE WARRANT $13,711.24 CASH/MONEY ORDER ONLY. EXECUTION OF 6 MONTHS SENTENCE IN THE TULSA COUNTY JAIL UPON ARREST. THE ISSUE OF ATTORNEY FEES IS RESERVED.

**05-08-2025  CTFREE**

JUDGE LORETTA RADFORD: BENCH WARRANT FOR LINH TRAN STEPHENS IN THE AMOUNT OF $13,211.24 PLUS $500.00 COURT FINES, ENTERED.

**05-08-2025  CTFREE**

JUDGE LORETTA RADFORD: ORDER OF THE COURT NON-JURY TRIAL ON CHILD SUPPORT CONTEMPT MAY 2, 2025, ENTERED.

**05-08-2025  BWIS$**                                                                                               $ 50.00

BENCH WARRANT ISSUED - SERVICE BY SHERIFF

**05-08-2025  O**

ORDER OF THE COURT NON-JURY TRIAL ON CHILD SUPPORT CONTEMPT MAY 2, 2025
Document Available (#1061165633) TIFF    PDF

**05-08-2025  ACCOUNT**

RECEIPT # 2025-4768729 ON 05/08/2025.
PAYOR: PILKINGTON LAW FIRM TOTAL AMOUNT PAID: $ 50.00.
LINE ITEMS:
FD-2015-2228: $50.00 ON AC01 CLERK FEES.

**05-28-2025  APLI**

APPLICATION FOR ATTORNEY FEES AND COSTS FOR CHILD SUPPORT CONTEMPT - MAY 2025
Document Available (#1059347353) TIFF    PDF

**06-24-2025  CTFREE**

RADFORD, LORETTA (DOCKET F): ORDER SEALING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS SIGNED;

**06-25-2025  AFDP**

RE:WHISTLEBLOWER STATUS AFFIDAVIT UPON STATE OF OKLAHOMA (EIN: 99-9000879), OKLAHOMA DEPARTMENT OF HUMAN SERVICES, CHILD SUPPORT SERVICES (EIN 73-1477405), STATE BOARD OF OSTEOPATHIC EXAMINERS (OSBOE) ET AL 99-9000879 AND THEIR AGENTS PART 1
Document Available (#1061717882) TIFF    PDF

**06-25-2025  AFDP**

RE:WHISTLEBLOWER STATUS AFFIDAVIT UPON STATE OF OKLAHOMA (EIN: 99-9000879), OKLAHOMA DEPARTMENT OF HUMAN SERVICES, CHILD SUPPORT SERVICES (EIN 73-1477405), STATE BOARD OF OSTEOPATHIC EXAMINERS (OSBOE) ET AL 99-9000879 AND THEIR AGENTS PART 2
Document Available (#1061717878) TIFF    PDF

**06-27-2025  TEXT**

RENEWED REVOCATION OF ALLEGED POWERS OF ATTORNEY
Document Available (#1061719139) TIFF    PDF

**06-30-2025  O**

ORDER SEALING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS
Document Available (#1061720021) TIFF    PDF

**07-14-2025  RECP**

RECEIPT FOR MANDATE - DF-122022
Document Available (#1061167118) TIFF    PDF

## 123a

On Friday, 5/2/2025 at 9:02am, Dr Linh Stephens was on the docket for family court in Judge Loretta Radford's courtroom. I arrived early at 8:00 am to deliver a pre-notarized Protest that Dr Linh Stephens had provided me to present to the court clerk and file into her case as well as a copy to the judge or her court clerk. So, by about 8:20am, both of those requests were complete. The Judge's court clerks name was Kacharra Mansker. Here contact is Kacharra.mansker@oscn.net; phone number, 918.596.5332. I then asked someone in the hallway who was instructing others how to get their documents to the judge how I would know if a court reporter was going to be in court. She said they normally had one. So I went to court and right away noticed that one was not present. So I asked the judge and she said no, they are not normally present. I objected to that as all hearings should be memorialized as part of due process in a court of record before rights can be affected.

OK Constitution Article 2 Section 7

Due Process Definition, Black's Law (4th and 5th Ed)

I had went downstairs to the main court clerk office to see if I could get a copy of a receipt for the one that had been prepaid for by Dr Linh Stephens. The woman there said that she did not see one ordered. I asked to pay for one to get a receipt. They explained that the judge would have to let me know if one was available first. Yet Judge said that I would have to have a receipt first. So, I explained to the judge that I was just downstairs trying to pay for it and they would not let me until the judge told them one was available. They would also not take my money. The filing court clerk said they were going by "the rules" and they knew the rules were that the judge had to approve the court reporter's presence first. I asked them to document what they were telling me were the rules as they understood them and to notarize what they were saying. They refused. I asked who made the rule and when it was made and if I could get a copy of that rule. They said I would need to contact Kim Hall, the court administrator as she was the one that implemented the rule a year ago when court reporters became hard to get. So, I went to her office before court hearing. The lady I spoke with there would not give me her name but said I would need to have the matter handled by the Bailiff, Samantha.Boen@oscn.net ; ph# 918.596.5333. The Baliff said one was being ordered for Dr Stephen's case (yet the court clerk said none was ordered and the judge said none was ordered unless payment was made). So I sat in court and waited for Dr Stephen's case to be called. While I waited, I also noticed in all of the plea deals that were being handled by other Pro Se litigants, that the judge would tell them that by going Pro Se that they were relinquishing their rights to a trial by jury or to call witnesses and more. I stood up to offer advice that the court could not ask them to waive those rights as no laws imparting the obligation of contracts shall be passed like interfering with one's oath to uphold the constitutional rights of We The People.

OK Constitution Article 2 Section 15

I was told to sit down by the judge and was instructed by a Sheriff's Deputy J. Williamson who would not give me his first name or his badge number when I asked that if I interrupted any more that I would be escorted out. I withheld any further interruptions until Dr Stephens' case was called. Dr Stephens case was held til the very end of the day the last case when everyone else left- zero eyes from the public, about 1-1:30pm, when it was finally called. Immediately I asked where the court reporter was and was told again I would need a receipt of payment for his/her presence. I let them know this hearing was not valid if there was no court reporter. They asked if I wanted an audio, I said I'll take what I can get but that the hearing would still be in violations without a court reporter and that I would still be making that report. After listening to a few comments from the prosecution side stating that Dr Stephens was in violations of some recent motions sent, I spoke up explaining that the case was not valid due to jurisdictional issues. The main violation is in US Constitution Article 3 when the state is a party the original jurisdiction is the Supreme Court. Also, Dr Stephens is a Vietnam citizen, which makes another Article 3 violation. The judge asked me my name, of which I explained I was one of The People court

watching for a case and offering advice to the court where I saw it was needed. The judge cut me off before I could make all the other necessary objections and she asked the Sheriff Deputy to escort me out. I asked if that was under the threat of arrest. He said no at first and I therefore said I would not be leaving then. Then he changed his mind and said "yes it was under the threat of arrest". So I let him escort me out without resistance.

I come in peace and love in the name of Christ Jesus to bring you this report of injustices I witnessed in the Tulsa Family court on 5/2/2025 in front of employees of STATE OF OKLAHOMA calling themselves as special judge Loretta Radford, 3 different payment/filing court clerks, judge's clerk Karacharra Mansker, bailiff Samantha Boen, Tulsa court administrator Kim Hall, and deputy sheriff J. Williamson.

Also Included: my audio recordings of my experiences from the day

https://drive.google.com/drive/folders/1QFxefl_qj4Qx9sFyC1vkVsft55ybsRB_?usp=sharing

Sincerely,

█████████████
███████████

## Notary as JURAT CERTIFICATE

STATE OF _oKlAhomA_ )
           ) ss
COUNTY OF ████████

    On this __6__ day of _mAy_, 20_25_ before me ████████████, a Notary Public, personally appeared a living woman _██████████████_ the Authorized Representative and Beneficiary for Legal Fiction_____ ), who electronically (remotely) proved to me on the basis satisfactory evidence to be the woman whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her autograph(s) on the instrument the woman executed, the instrument.

    I certify under PENALTY OF PERJURY under the lawful laws of Oklahoma state law and that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature of Notary/Jurat

Dear Valued Affiant,

I am not an attorney. Nothing in this letter is legal advice. Consult qualified counsel, the U.S. Marshals Service, or the U.S. Attorney's Office before acting.

Thank you for your extraordinary bravery in providing an affidavit to support Federal Case No. 3:25-cv-00199, which addresses concerns about systemic unconstitutional practices across all 50 states. Your willingness to share your experiences regarding what we believe are unconstitutional actions—such as the unwarranted removal of children without criminal charges, training caseworkers to force or coerce their way into homes without warrants or legal court orders, and due process violations including the failure to apply the fruit of the poisonous tree doctrine—is a testament to your strength. We recognize the difficulty of this effort and are proud of your commitment to seeking justice. This letter and affidavit are not to be transferred or copied to other individuals, except to those directly affecting you, to help safeguard your privacy.

The *Chevron Doctrine* has been overturned and cited as unconstitutional, and the ruling in *SEC v. Jarkesy* (2024) has been referenced by the President of the United States in calling out unconstitutional practices by administrative law judges. Section 242 of Title 18 of the U.S. Code addresses certain civil-rights violations, which may relate to the issues raised, including the removal of children without criminal charges as noted in *Troxel v. Granville* (530 U.S. 57, 2000), which protects parental rights absent a compelling state interest. Information about the Witness Protection Act exists, potentially including safety measures, but specific actions depend entirely on the U.S. Marshals Service's judgment following official review. Your affidavits serve as testimony against your state and its actors for these unconstitutional practices!

Should you encounter retaliation, threats, or harassment from state actors, including local police, CPS/DCS, judges, or magistrates, please consider reporting these to the U.S. Attorney's Office or the U.S. Marshals Service. It will be their discretion to assess and address any potential federal crimes. Your participation remains voluntary, and you are encouraged to seek legal counsel to navigate this process.

Please keep this letter for your records. For further guidance, consult the court clerk at the U.S. District Court for the Eastern District of Tennessee or a licensed attorney. For assistance or to initiate protection if you feel intimidated or coerced for participating in this federal case, contact the U.S. Attorney's Office in your district or the U.S. Marshals Service. This acknowledgment does not guarantee entry into the Witness Protection Program, as eligibility requires a formal determination by the Office of Enforcement Operations following a thorough review. However, your role as a witness challenging all 50 states and their actors, coupled with any documented retaliation, may support consideration due to the heightened risks involved.

Thank you again for your courage and dedication to this cause.

Sincerely,
Scott "Gunner" Evers    x _____

Sharon Evers              x _____

State of _TN_ County of _BLOUNT_
Subscribed and sworn to (or affirmed) before me on this
_27_ day of _June_ , 20_25_ by
Scott Evers  Sharon Evers _ proved to me on the basis
of satisfactory evidence to be the person(s) who appeared before me.
Notary Signature _____
Exp: 10/28/2028

NICHOLAS O. TEFFETELLER
STATE OF TENNESSEE
NOTARY PUBLIC
BLOUNT COUNTY